## MATTHEW BLOOM v. J. H. FERGUSON.

ERROR TO THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY.

Argued April 22, 1889—Decided October 7, 1889.
[To be reported.]

1. Where three corners and three lines of a quadrilateral survey are known, the fourth line is to be located on the ground by a line running according to the official course, as returned, to the intersection of the line from the third known corner: See Grier v. Penna. Coal Co., ante p. 79.

2. In such case, there being but one line open on the ground, the legal presumption is that that line was run as it was returned, unless there is some monument of the survey to control the line and deflect it from its official course.

3. When the question is simply one of boundary between two interior surveys of a block which are conceded to be marked on the ground, it is error to control the course of the only unknown line by a corner on an independent survey, although it may be of the same block.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 7 January Term 1889, Sup. Ct.; court below, No. 57 September Term 1885, C. P.

On May 22, 1885, James H. Ferguson brought ejectment against Matthew Bloom and others to recover a parcel of land containing 19 acres and 38 perches in Ferguson township. Issue.

At the trial on May 15, 1888, it was shown that the plaintiff claimed title to the land in dispute as part of the John Steiner survey, while the defendant claimed title to it as part of the Abram Scott survey. The plan immediately following represents a connected draft of the official returns of these surveys with those of two other surveys next the line where the land in dispute lay. The work of the deputy surveyor on the ground is shown by a plan of somewhat different shape given on a subsequent page.

The facts in controversy and the contentions of the parties thereon, appear in the charge to the jury, KREBS, P. J.:

The plaintiff has introduced his line of title to the John Steiner survey, showing the warrant of location, the survey and patent to one Thomas Spackman, and subsequent conveyances by Spackman to persons under whom he claims title.

On the part of the defendant, he has shown title to a portion of the Abram Scott warrant and survey.

There is no contention between these parties, so far as this case is concerned, that the plaintiff does not own a portion of the John Steiner survey, or that the defendant does not own a portion of the Abram Scott survey. The dispute arises as to what is the correct division line between them. The defendant, of course, could rest on his possession; we assume that he was in possession of the land at the time the writ issued or was served on him; he could stand there until the plaintiff showed a perfect legal title, and the right to turn him out and take possession, as against all the world. But he has gone further than that, and has shown, what on its face appears to be a legal title to a portion of the Abram Scott survey, and therefore it becomes all the more important in this case to determine whether or not the land in dispute belongs to the John Steiner survey, or whether it is a part of the Abram Scott survey.

\* \* \* \* \* \* \* \*

As we view this case, it is simply a question of the location of those tracts. It would seem that in 1792, some persons, we have not the necessary papers here to show who the applicants were, but there was an application for some sixty tracts of land, beginning in what is now the borders of Cambria county, and extending down Clearfield creek, through Jordan, Ferguson, and Chest townships, and including the tracts of which the land in dispute is a part. Those surveys would necessarily have to be located on different days and at different times. The first or leading warrant in that application is in the name of Deckert. The next one is George Graff, which calls for and adjoins the Deckert. Then the Jacob Meyers, which calls for and adjoins the George Graff, and so on down, until you get to the end of the entire application. The John Steiner in the application, calls for and adjoins the Adam Rughart, Sr., and we find from the evidence we have before us, that this tract, the Adam Rughart, Sr., calls for the Samuel Scott, and

the Samuel Scott calls for the Abram Scott. The defendant has offered in evidence, certified copies of the official surveys of the seven tracts represented on this map. They are the Jacob Martin, David Trissler, John Steiner, Adam Rughart, Sr., Samuel Scott, Abram Scott and Matthias Slough. It seems that the Jacob Martin and David Trissler were surveyed on July 30, 1793; the Adam Rughart, Sr., and John Steiner, on August 4, 1793, and the Samuel Scott, Abram Scott and Matthias Slough, on August 5, 1793. From the evidence offered by the plaintiff, the John Frey survey seems to have been made on August 21, 1793.

[It is evident that these warrants and surveys are part of a larger block of surveys. It is a well settled principle of law, that in the location of blocks of surveys the senior block must be located first by its marks found upon the ground, if there are any; if there are no marks upon the ground, then by the calls; if there be no calls, then by the courses and distances. And this same rule applies when we come to individual surveys. But when we come to locate individual members of a block of surveys, we must locate them with regard to the entire block. The authorities are, that in the location of surveys which are members of a block, we must have regard to the marks upon other parts of the block. Thus, all the marks upon the different surveys are to be regarded in the location of the surveys within the block.] [1] In other words, we think there are upon this block of surveys, other marks, well established, than those upon John Steiner, and its adjoining surveys, and while there are some corners of the John Steiner survey, the lines are not all found upon the ground. So that in establishing these lines or corners, not found upon the ground, we may not disregard entirely the other marks that are well established, which relate to the other members of that block of surveys, if they will assist in the location of the John Steiner.

Now, in the location of the John Steiner survey, so far as the marks found upon the ground are concerned, there is not much in dispute between the plaintiff and the defendant, in the testimony of the surveyors. Both the plaintiff's and defendant's surveyors testify that the hickory at the east or southeast corner of the John Steiner survey, is or was found upon

the ground, and is a well recognized corner; that it is what is called original work, and when found, blocked to the date of the survey, which is August, 1793; that the line from the hickory, south 51 degrees west, on the draft of the defendant, and south 54 degrees west, on the draft of plaintiff to the white oak, at the southern corner of the John Steiner survey, is original, and corresponds in date with the date of the survey, or 1793; that the line continuing on southwest from the white-oak corner of the John Steiner survey, the same course, is also original work. The dogwood at the west corner of the Matthias Slough is also testified to by the surveyors, both for the plaintiff and defendant, and there is no dispute as to its location. The line running north 54 degrees east, on the draft of the defendant, and the same course on the draft of the plaintiff, 240 perches from the dogwood corner of the Matthias Slough, to the sugar corner, is also original. There is no dispute between the surveyors as to the location of the sugar corner, the north corner of the Matthias Slough, and the west corner of the John Frey, or that the line running from the sugar corner, north 54 degrees east, to a point calling for pointers or hemlock, is also original. And there is no dispute but that the hemlock corner is original, and is the correct corner of the John Frey survey. These lines and courses that I have just mentioned, are to be taken in this case, gentlemen of the jury, as admitted facts. There is no dispute between the plaintiff and the defendant as to these points.

The plaintiff and defendant also admit that the white pine at the north corner of the John Steiner, is a well-established point. The plaintiff would run a line from the white pine at the north corner of the John Steiner to the hemlock at the north corner of the John Frey, that is, a straight line between those two points. That would be correct, in the absence of any work on the ground showing it to be otherwise. Mr. Read, the surveyor of defendant, testified however, that starting at the hemlock, the north corner of the John Frey, and running south 41 degrees east, he found numerous marks, or a number of marks, corresponding to the date of the survey, or 1793; that he followed it on south, to a point inside of the John Steiner survey, and that he then turned and ran north 54 degrees east, and on a line running that course he also found

marks blocking to 1793, and coming out eleven and eight tenths perches, or something of that kind, south of the white pine corner of the John Steiner survey. Now, if it be true that he found that original work, then it would be very strong evidence that that would be the line of the John Frey, and not the line that the plaintiff would run from the hemlock corner of the John Frey diagonally to the white pine corner of the John Steiner. But that line, gentlemen of the jury, is not a controlling line of itself in the location of the division line between the John Steiner and Abram Scott surveys. It is not to be disregarded by you, in the consideration of this case, but of itself, it does not control. The fact that that line is found on the ground, if you believe that to be so, as testified to by Mr. Read, from an examination of the blocks produced here, it would fix the northeastern line of the John Frey.

There is no original line running from the white pine at the north corner of the John Steiner, to the gum, an admitted point,' being the western corner of the Abram Scott survey. The interior line between those points, the white pine and the gum, is not found upon the ground, and, so far as we have any evidence here, never was run by the surveyor. That is, it was not run on either the 4th or 5th of August, 1793. I think there is some evidence of a younger line between those points, the white pine and the gum, but there is no evidence, so far as we remember the testimony, that shows a line there corresponding with the date of either of those four surveys, the John Steiner, Abram Scott, Matthias Slough, and John Frey. Neither does there appear to be any line running north from the white oak corner of the John Steiner, to the John Frey, or to the sugar at the west corner of the John Frey.

The official drafts offered in evidence by the plaintiff and defendant, both indicate, gentleman of the jury, that at the interior point where these four tracts intersect, the John Steiner, Abram Scott, Matthias Slough and John Frey, a post is called for, but that there is no post there; no line running in any direction from any given point there, blocks to the date of survey. This fact would furnish, if not conclusive evidence, at least very strong evidence that the surveyor never did run those lines on any date corresponding with the date of either of those surveys; that he was not there on the ground, but that the lines

were simply protracted on the official copies which he sent to the land office. The official drafts of these surveys, from the land office, when placed together, call for a straight line running from the white oak to the sugar.

The defendant contends that we may not locate these tracts by a straight line from the white oak to the sugar, but that the correct method of locating it would be to run a line by the official course from the white oak of the John Steiner, north 37 degrees west, to a point on the line running from the white pine of the John Steiner, to the gum corner of the Abram Scott. The plaintiff contends that that is not the correct method of locating it, but that with the white oak of the John Steiner as a starting point, we must conform to the return of the survey, and run the line straight from the white oak to the sugar corner of the John Frey. Now, gentlemen of the jury, this brings these questions of fact, those different corners being admitted, to a question largely of law for the court. If you find the evidence to be that these are original corners, the hickory, the white oak, and white pine of the John Steiner, the sugar and hemlock of the John Frey, the dogwood of the Matthias Slough, and the gum of the Abram Scott, being original marks on the ground, and that there are original lines running to and from them, if you so find, then it becomes largely a question of law as to how that line between the Abram Scott and John Steiner is to be located. If the court make a mistake in the location of the line, the parties are not without remedy, and it becomes our duty to say, what in our opinion is the correct method of locating that line, keeping in mind what the Supreme Court has said as to disregarding any other marks upon that block of surveys. [It is our opinion, and we say so to you, that the correct method of locating that point, the common corner between those four surveys, is by running a line from the white pine of the John Steiner to the gum of the Abram Scott, and then running a straight line from the white oak to the sugar, and where these lines intersect would be the common corner of those four surveys. If by running the lines in that manner it gives the land in dispute to the plaintiff, it is our duty to say so; if it gives it to the defendant, it is as much our duty to say so. It would seem from the evidence in this case, that running a line in that way would throw the land in dispute on

the side of the John Steiner survey, and if you so find that it does, then your verdict would be for the plaintiff.] [2] If it does not, or if part of it only goes there, then you must endeavor to fix the course of that line. I believe the surveyor for defendant has marked that line as north 49½ degrees west, and the surveyors of the plaintiff have fixed it at north 50 degrees west, so there is a variation of one half a degree. But whichever of those two lines you find to be the true course, under all the evidence in this case, [if you find those marks, that we have stated to you, to be on the ground and bearing the date of the survey, then you must run the line from the white oak to the sugar, and fix the course of it in your verdict.] [3] You must consider all the evidence that is before you. If we err in our opinion as to the location of this line, it is so plain that there can be no difficulty in discovering it, and our higher court, which sits for the purpose of correcting the errors of the court below, will find and correct the error.

Now it is your duty to be governed by the instructions of the court, unless you find that the line should be run north from the white oak to the line of the John Frey survey. There is no serious contention on the part of the defendant that there are any such original marks to be found, as the oldest mark on that line is a mark of 1806.

The defendant asks us to instruct you in regard to the following propositions:

1. The lines and corners of the John Steiner survey of July 30, 1793, are not to be determined or controlled by the distant sugar tree corner on the junior survey of the Matthias Slough, which then had no existence, and was not made until August 5, 1793.

Answer: We must decline to so instruct you.[4]

2. Said Steiner survey is to be located according to the marks made for it at the time, or, in the absence of such marks, then by the adjoiners then existing for which it calls; and in the absence of both, then by the courses and distances called for by the survey.

Answer: That is true as a general proposition of law, but in this case we think that the survey of the John Steiner is controlled in some measure, and to a great measure, in its loca-

tion, by the official call, which is for a straight line from the white oak to the sugar.[5]

3. If the original boundary of the John Steiner survey, on the northeast side, is the line from the white pine to the hickory, and the white oak at the south corner is the original corner, as would appear by the undisputed testimony of the surveyors, then the southwest boundary of that tract would be determined by a line run the official course from the white oak to its intersection with the proper line from the white pine corner.

Answer: We deny that proposition.[6]

4. As the Abram Scott survey, made on August 5, 1793, calls for the said white oak corner, and for the said Steiner survey as its boundary on the northeast side, and no lines between them are found upon the ground to prevent the said Scott survey from reaching to said adjoiner, the said Scott tract therefore goes to the said Steiner survey.

Answer: That is true, gentlemen of the jury. The Abram Scott survey does go to the John Steiner survey. As we said to you before, we, in our opinion, locate the John Steiner survey by running a line from the white oak to the sugar; then the Abram Scott goes to that line, wherever you find that to be. It is undoubtedly true, that the Abram Scott goes to the John Steiner, wherever it may be.[7]

5. Under the law and evidence in this case, the distant sugar corner between the Matthias Slough and John Frey surveys cannot control the line between the John Steiner and Abram Scott surveys.

Answer: We refuse to so instruct you.[8]

6. If we accept the facts testified to by the surveyors, to be true, then the division line between the John Steiner and Abram Scott surveys would substantially correspond with the one claimed by the defendant, Matthew Bloom, and would give the disputed land to him.

Answer: So far as it would give the disputed land to him, it is a question of fact whether running the line, as we have instructed you, from the white oak to the sugar, would give him, defendant, any portion of this land. Whatever of this disputed land lies on the Steiner side of the surveys the plaintiff would be entitled to recover. If any portion of it lies on the Scott side, of course, the defendant would recover for that. The

plaintiff is only entitled to what land you find on the northeast side of the line running from the white oak to the sugar.[9]

10. Under the law, the pleadings and the evidence, the plaintiff cannot recover, and the verdict should be for the defendant.

Answer: We refuse to so instruct you.[10]

Now take this case, and dispose of it under the instructions we have given you, as the law would seem to require.

The jury returned a verdict for the plaintiff " for all the land lying on the north or northeastern side of the line beginning at the white oak corner of the John Steiner and Abram Scott tracts, and running north 50 degrees west to the sugar at the corner of the Matthias Slough and John Frey tracts." A rule for a new trial having been discharged, judgment was entered on the verdict when the defendant took this writ, assigning as error:

1–3. The portions of the charge included in [ ] [1 to 3]
4–10. The answers to the defendant's points.[4 to 10]

*Mr. Thomas H. Murray* and *Mr. Cyrus Gordon*, for the plaintiff in error:

I. The court erroneously assumed that the four tracts, the Steiner, Scott, Slough and Frey, were part of a block of surveys, and that the location of the Steiner must be determined by the location of the block to which it thus belonged.

1. There was not sufficient proof of the existence of a block of surveys of which these were a part. True, the plaintiff offered in evidence a certified copy of applications for some sixty warrants, including the land in dispute, but with the exception of the four surveys offered in evidence by him and the five or six surrounding these, there was no proof when or where or how those warrants were located. There was error in thus assuming the existence of a block of surveys without proof of it: Mock v. Astley, 13 S. & R. 385; Schnable v. Doughty, 3 Pa. 398; Collins v. Barclay, 7 Pa. 73.

2. The mere facts that surveys adjoin and are upon warrants of the same date and surveyed in the same month, do not constitute them a block of surveys. In addition to these facts it should further appear that the surveys alleged to constitute a

block were: (*a*) located for the same owner, whether an individual or a company; (*b*) by the same surveyor; (*c*) and returned at the same time: Mathers v. Hegarty, 37 Pa. 67; Fritz v. Brandon, 78 Pa. 351.

3. From the same authorities, and also from the nature of the case, the block of surveys, if one be shown to exist, must be located either by ascertaining its exterior lines or corners, if they can be found, or, if they cannot be found, then by locating the leading warrant, and locating the others to it, successively by their calls. In other words, the question in such case is the location of the block, and that can be done only by ascertaining its exterior lines: Hagerty v. Mathers, 31 Pa. 357; Northumb. Coal Co. v. Clement, 95 Pa. 137.

II. In the absence of proof that the John Steiner survey was a member of a block of surveys, and of the location of the block to which it was alleged to belong, it should have been located by the rule applying to individual surveys.

1. This rule is thus laid down: As the elder block determines the younger block (and almost all of these early surveys in the back counties were made in blocks), so among individual warrants of the same date the older survey controls the location of the younger: Hagerty v. Mathers, 31 Pa. 355. And where could a survey of 1793 be found, on which are to be found more original monuments of location? Here are three corners, the pine, the hickory and the white oak; the line on the southeast, the line on the northeast, and the line over three fifths of the distance on the northwest, all counting to date.

2. Then it is to be kept in view that of these four surveys, the Steiner was the oldest, having been first located. The Scott, the Slough, and the Frey were all of a later date. This being the case, the place of the Steiner was fixed by its own location and its own work, so that it could not be affected by any monument of a survey of later date; the adjustment of the lines of a younger survey can never affect the location of an older: Carbon Run Imp. Co. v. Rockafeller, 25 Pa. 55; Bellas v. Cleaver, 40 Pa. 268; Pruner v. Brisbin, 98 Pa. 204, 211.

III. But, assuming that this was a case of a block of surveys, then the court were as clearly wrong in their application of the rule as to a mark upon any part of the block applying to each survey therein, for the following reasons:

1. The rule is given its full force in one of the following classes of cases; either (a) where the survey in dispute has no original monuments of its own, or not sufficient of them to locate it: Malone v. Sallada, 48 Pa. 424; Eister v. Paul, 54 Pa. 198; or (b), when the dispute is between one or more exterior members of a block of surveys and an outside survey: Pruner v. Brisbin, 98 Pa. 202; Northumb. Coal Co. v. Clement, 95 Pa. 126. Here, however, the dispute is between two members of the same alleged block, one of them with two lines and two corners, the other with three lines and three corners on the ground.

2. The rule invoked by the court has never been so applied as to subordinate the mark found on the disputed survey, to that found over a mile away from it, on the far side of another and younger survey; nor so as to distort the shape of the surveys, as fixed by their own work and by the official return, both of which were done here: Mathers v. Hegarty, 37 Pa. 64.

3. The principal reason urged by the learned court in support of the location adopted is unsound. That is, that the official connection calls for a straight line from the white oak to the sugar, and for a common interior corner for the four tracts. The answer is that the same official connection calls for a straight line on the northeast from the hickory to the hemlock, and a common corner at the pine, but the work on the ground shows that that line is not a straight line, but has an offset of half a mile at the pine where that common corner is called for. There can be no safer rule than that the marked lines and corners actually found are the basis of the courses and distances of the lines not found. The radical error of the court below was in losing sight of this wholesome rule, and also of the presumption that the interior lines were intended to be parallel with the exterior lines, and that this presumption is to be overcome only by the "existence of landmarks indicating that the contrary is the case:" Hagerty v. Mathers, 31 Pa. 357; Jackson v. Lambert, 121 Pa. 190.

*Mr. Frank Fielding* (with him *Mr. W. D. Bigler*), for the defendant in error:

I. The first part of the argument of the counsel for the defendant discusses a question which more properly should have

been raised first in the court below. It is based on the erroneous assumption that the Steiner, the Scott, the Slough, and the Frey tracts were not part of a block of surveys, and that that fact was not proved. There was no dispute in the court below as to that. It was so sufficiently proved that the question was not raised. The court, the counsel on both sides, and all the surveyors recognized and accepted and treated all these four surveys and their adjoiners as surveys of the same block, and we maintain that that question of fact cannot now be raised for the first time. The warrants of these four surveys being issued on the same day, and the return of survey, made by the same surveyor, calling for each other, the fact of their being surveyed on different days does not militate against their having been located as one body: Mathers v. Hegarty, 37 Pa. 67. The court will not reverse on a ground not taken in the court below, which rests on matter of fact: Snevily v. Egle, 1 W. & S. 480; Penna. Hall Case, 5 Pa. 204; Rank v. Rank, 5 Pa. 211; Wright v. Wood, 23 Pa. 131; Dorman v. Turnpike Co., 3 W. 128.

II. We maintain that the learned court, in its general charge was right in its exposition of the law, relating to the location of surveys in blocks, in saying, " when we come to locate individual parts of a block of surveys, we must locate them with regard to the entire block. The authorities are that in the location of surveys which are parts of a block, we must have regard to the marks upon other parts of the block; that is, all the marks upon the different surveys are to be regarded in the location of the surveys within the block."

1. The rule of priority of date does not apply to surveys in a block: Sugar Valley L. Co. v. Barber, 87 Pa. 313; Pruner v. Brisbin, 98 Pa. 205. " Where several tracts of land are surveyed together in one block, but the interior division lines are not run, the presumption is only prima facie that such interior lines were intended to be parallel to the lines bounding the block. Such presumption may be overcome by the existence of marks indicating that the contrary is the case:" Parks v. Boynton, 98 Pa. 370. " Marks upon any part of a block belong to each part of the block:" Eister v. Paul, 54 Pa. 196; Malone v. Sallada, 48 Pa. 425.

2. Watson v. Jones, 85 Pa. 117, where the same question

was involved as in this case, conclusively sustains the position of the defendant: "As these surveys were made on warrants of the same date for the same party, were returned at the same time, and were, as conceded, chamber surveys, we can give neither precedence from an apparent difference of time of location. The problem, then, is to find the dividing line between two tracts of land, which, as to their exterior lines are to be treated as a single block."

3. There is no line of 1793, running southwest from the pine, as claimed by the learned counsel, and as shown on his draft. That line of 1793 is 12 rods inside the Steiner survey, starts at a fallen spruce, and has no connection with the pine corner. Moreover, the location of the northeast line of the Frey was not in this case, and could not be made a part of it. If it had been, we could have shown, under Hunt v. McFarland, 38 Pa. 69, that the line marked by defendant on his draft as the northeast line of the Frey was an abandoned line, and that the true line was a straight one, from the hemlock to the pine.

4. It was the province of the court to direct the jury between what two points the division line should be run : Watson v. Jones, 85 Pa. 117. Moreover, the defendant virtually admits that the true boundary between the John Steiner and the John Frey would be by running a straight line from the white pine, the common corner of these two tracts on the northeast, the official course, which must lead to the gum corner of the Matthias Slough and Abram Scott. Then is it not just as logical and as clearly right to establish the boundary between the John Steiner and the Abram Scott, and the John Frey and the Matthias Slough, in the absence of any work on the ground, by running a straight line from the sugar to the white oak?

OPINION, MR. JUSTICE WILLIAMS:

In the case of Grier v. Penna. Coal Company we have held, in an opinion filed at the present term [ante, p. 79], that the exterior lines of a block of surveys must be located in accordance with the marks of the surveyor, made or adopted for the survey, and now found on the ground. When these fail, resort must be had to the calls, if any, returned by the deputy surveyor; and, in the absence of calls, then to the presumption that the lines were run as they are returned. We have now

the case of two surveys, interior members of a block, between which no division line was ever run upon the ground, and the question on which this case depends is, how shall that line be run?

Ferguson is the owner of a survey in the name of John Steiner, surveyed on August 4, 1793. Bloom claims under the Abram Scott warrant, surveyed on August 5, 1793, as adjoining the Steiner on the south. Both were surveyed and returned by the same deputy surveyor, and are part of a block of over sixty surveys located by him, but no effort seems to have been made to show the exterior lines of the block, or to locate it as a whole. On the other hand, four adjoining interior surveys are placed before us, two of which are the Steiner and the Scott, with nothing to show their relation to the block of which they are said to be part, or the original work on its exterior lines. The other two surveys are the John Frey and the Matthias Slough, which are returned as adjoining the Steiner and the Scott, respectively, and as officially connected they appear to be four adjoining warrants of same size and form, having continuous exterior lines and a common interior corner at a post. The work on the ground shows that the line on the northeast is not continuous, but the northwest corner of the Frey is about one half mile southerly from a continuation of the northeast line of the Steiner. The line on the northwest of the Slough and Frey is about a half mile shorter than the opposite line along the southeast of the Steiner and the Scott. This surplus is found in the line of the Scott. The result is that the sugar, the common corner of the Slough and the Frey, is not opposite the white oak, the common corner of the Steiner and the Scott, but is a half mile southerly from its place as returned.

The learned judge treated this case as one to which the doctrine of Eister v. Paul, 54 Pa. 196, and kindred cases, was applicable, viz., that "marks upon any part of a block belong to each tract of the block;" and directed the jury that the division line between the Steiner and the Scott was to be run from the white oak to the sugar, on a line diagonal to the other lines of the tracts. The case depends on the correctness of this instruction.

The following important facts should be borne in mind in

examining this question: 1st. The location of the block, as such, is not involved, nor are its lines before us. 2d. The location, that is, the existence on the ground, of no member of the block is challenged in any manner. 3d. The question is simply one of boundary between two interior surveys in a block conceded to be on the ground. What have we to guide us in fixing this boundary? .The Steiner and the Scott have a common corner at the white oak, which fixes the southeastern terminus of the line between them. From this point we have an original line running to the hickory at its northeast corner. The line is on the ground from the hickory to the white pine, the northwest corner. From the white pine there is a line of 1793 running southwesterly 160 rods, then turning at right angles and running to the hemlock, the northwest corner of Frey, forming the northeastern boundary of the Frey. We have also an original line from the hemlock across the northwest sides of the Frey and the Slough. The Scott has two original lines, one on its southeast running from the white oak, and one on its southwest, ending at the gum, the common corner of the Scott and the Slough.

There ought to be no difficulty in settling the boundaries of either of these surveys, from the original work on the ground made for and applicable to each. Starting at the white oak we follow original lines along two sides of the Steiner, and we have three original corners. We have also the line running southwesterly 160 rods from the pine, and turning northwesterly to the hemlock, the northwest corner of Frey. Some question is raised over the character of the line southwesterly from the pine, but none over the proper location of the line on that side of the Steiner. It is conceded that starting at the pine it should run on the course called for, which is in the direction of the gum, the common corner of the Scott and the Slough. This leaves the line open only on one side. With three original corners, two original lines, and a third line, the location of which is not questioned, we have the legal presumption that the survey was made as it was returned. Unless there is some monument of the survey or some call to control it, the line must be run from the white oak, on its official course, to the intersection with the line southwest from the pine. Is there monument or call to deflect this line from its course as re-

turned? It is conceded that there is nothing on the southwest of Steiner and northeast of Scott, for the line was not run on the ground. There is no marked tree or fixed monument called for at the southwest corner. There is no call for an adjoiner that can control the direction of this line; for, while the connected draft represents these four tracts as having a common post corner, and the Frey as adjoining the Steiner along the whole extent of its northwest side, the work on the ground, which overrides the calls, shows the return to be mistaken. The lines as run push the Frey a half mile further to the southwest than the return represents it, and give to the Scott a half mile more of length of line in that direction. The calls, whatever value they might otherwise have, being thus discredited, we have nothing to prevent the running of this division line upon its course as returned, from the white oak to the intersection with the line southwest from the pine.

But the learned judge regarded the sugar, the common corner of the Frey and the Slough, as a monument of the Steiner. Why? It is not on the lines of the Steiner. It is not adopted, referred to, or noted in any manner by the deputy surveyor, as a monument of the Steiner, in his official return of that survey. It belongs to other surveys, which, while members of the same block, are in all other respects independent of each other and well located by original lines on the ground. It was a mistake, therefore, to apply a rule intended to protect a member of a block which was without lines on the ground from the encroachments of a junior survey by calling to its aid all the marks on the lines of the block to fix its location, to a question of boundary between interior members of the same block; especially when as here the lines of the block were not before the court.

If the southwest corner of the Steiner had been fixed by work on the ground, it would not be supposed that it, or the southwest line of the Steiner, could be affected by the sugar in any manner whatever. But the original work on the lines of the survey locate that corner as certainly as the presence of a monument on the ground: Id certum est quod certum reddi potest. The legal presumption that the survey was made as it was returned must prevail, until it is overcome by work on the ground, or by calls that require an abandonment of it.

This rule is applicable to a single survey and to a block of surveys with equal force. If a survey has no work of its own it must call to its aid that of the block of which it is part; for, the legal presumption that the survey was made as it was returned cannot be made to help in the location of a tract, until a starting point has been identified somewhere on the lines of the block from which the work of tracing the lines can be securely begun. But with an original mark for a starting point, the lines may be run in accordance with the legal presumption and will hold the tract against all younger surveys. The work found on the ground is the basis. It fixes the footsteps of the surveyor, so far as it exists, and from it the legal presumption projects the lines along the courses and distances as returned, and incloses the tract: Pruner v. Brisbin, 98 Pa. 202; Bellas v. Cleaver, 40 Pa. 260; Malone v. Sallada, 48 Pa. 419.

Closing the survey of the Steiner in accordance with its own original work, we preserve the regularity of its outline and that of the three other surveys whose lines are before us; we preserve substantially its quantity of land as well as that of the Frey and the Slough. We follow the legal presumption that lines are to be run as they are returned, unless controlled by work on the ground applicable to them, and we give full weight to the marks of the original survey. If we go to the sugar, a monument of the survey of other tracts, we change the outlines of each of the four warrants. We add largely to the quantity in two of them, by taking as largely from the other two. We disregard the legal presumption and the return of survey on which it is based; and we also disregard the work on the ground and the disagreement between it and the location of the Frey and the Steiner as adjoining along the entire breadth of each. These considerations show the necessity for adhering to the rules of location, to which we have referred, which place work on the ground first, then calls for adjoiners next, and in the absence of marks or calls, or when the calls are shown to be a mistake, then the legal presumption of location in accordance with the return of survey. If there was no work on the ground by which the Steiner could be located, then resort could be had, must necessarily be had, to the original work on other parts of the block; and then it would be true that any mark on any part of the lines of the block, exte-

rior or interior, would for purposes of location become marks of the Steiner survey; but as the marks made for this survey are abundant to fix the place of all its lines, without resort to work done for other surveys, it must be located in conformity with the lines run and corners marked for it.

These views sustain the second and third assignments of error. The first assignment we have treated as immaterial. There was some evidence showing that the surveys under examination were parts of a large block, but there was none showing the lines of such block as a whole, or the relations of the Steiner and its adjoiners to the block. The error was not in speaking of the Steiner as part of a block, but in fixing its open line on the southwest by a rule not applicable.

> The judgment is reversed and a venire facias de novo awarded.