# Phebe T. Morrison, Appellant, *v.* Charles D. Seaman, Ann S. Seaman, Lydia Smith and J. C. Drury.

*Land law—Warrants and surveys—Location—Calls—Courses and distances—Blocks.*

In the absence of monuments of the original surveys, calls for adjoiners, courses and distances and the legal presumption that the surveys were made as they were returned into the land office are to be resorted to in order to locate the line of any given survey. In the case of interior members of a block the rule is that marks made by the surveyor for any tract in the block are evidence for the purpose of fixing the lines of any other tract in the same block. But where lines are run and marks made by the surveyor for a particular tract sufficient to fix its place on the ground, the rules applicable to the location of individual warrants are to be followed, and those applicable to the interior tracts of a block have no application.

If many of the tracts inclosed by exterior lines are without marks upon their own lines made for them, still if one or more of such tracts has original marks of an earlier date on its lines, which were adopted by the surveyor for the location of the tract in question, such adopted work will control the location of the tract in the same manner as if the marks had been made by the surveyor instead of being adopted by him.

Where a number of surveys were made by the same surveyor at about the same time, and the surveys, while not constituting a block in the legal sense of the word, show definite and ascertainable monuments of the original survey made or adopted for each of the tracts, the court, in ascertaining the division between two of the tracts, must retrace the footsteps of

1897.]                     Syllabus—Charge of Court.

the surveyor from day to day as nearly as the marks he has left behind him will permit.

*Warrants—Surveys—Original lines—Excess of distance—Deflection of lines.*

In locating the north and south line between two tracts where the western tract has an established monument at its northwest corner, and the eastern has an established monument at its northeast corner, and the north line of the two warrants overruns the official distance, the excess of distance between the two established monuments must be divided proportionately between the two warrants, in order to establish a common corner for them.

Where a number of warrants were surveyed by the same surveyor at about the same time, and a deflection appears in one of the lines of the most southern tract, such deflection will not extend to or affect the lines of any warrant north of it, where it appears that the warrants north of it were first located; that the disturbing monument was peculiar to the southern warrant in question, and that all the other tracts in the entire body of the surveys could be located by the original work made or adopted for them respectively.

Argued May 4, 1897.   Appeal, No. 126, Jan. T., 1897, by plaintiff, from judgment of C. P. McKean Co., Oct. T., 1894, No. 42, on verdict for defendants.   Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.   Reversed.

Ejectment for eighty acres of land off the east end of warrant No. 3725 in Corydon township.   Before MORRISON, J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[We think that the answers to the points presented by the counsel on both sides, will dispose of all the questions necessary for us to discuss in this case.   But, as preliminary to that, we will refer briefly to the reason why we do not adopt the oak at the southwest corner of 3724, and the quaking aspen at its southeast corner, and the cherry called for at the southeast corner of 3731, as a means for fixing the line between 3725 and 3721.

Upon the map that you are looking at (plaintiff's map), you will notice that the lines running between 3714 and 3731, the line between them from the ash, is connected to the cherry; you will also notice that there is a line connected between 3724 and 3731 upon their map.

The undisputed evidence, as we understand it, shows that those lines were not run through there and marked upon the ground. It shows also that there was not a connection between the southwest corner of 3725 and the oak which is called for as the southwest corner of 3724; that they were not connected upon the ground. The evidence, we think, sustains the theory of the defendants that the south line, called the Holland Land Company, the line between the Robert Morris surveys and the Holland Land Company, is not actually connected on the ground at any place with the batch of surveys north, except the district line on the east, which we do not think cuts any figure in this case; now from the fact that the undisputed evidence shows a surveyed line marked on the ground from the ash, the southeast corner of 3721, to the ironwood, the northeast corner of 3704, and thence west to the Allegheny river, with several of the corners marked along their north and south line, and the fact that the actual work upon the ground does not connect the quaking aspen and the oak and the cherry with the survey north of it, we think there must be some other rule adopted to fix the line between 3725 and 3721 than to work from the Holland Land Company's line, the south line shown on the map. While we have some doubts about it, we are not able to discover in the time we have had to investigate it, any better method than the one set forth very succinctly in the defendants' points.] [1]

Plaintiff's points and answers thereto among others were as follows:

3. It being a fact conceded by both sides, that the line dividing the tier of Robert Morris warrants on the west, composed of Nos. 3727, 3726, 3725 and 3724 from the tier of Robert Morris warrants on the east, composed of Nos. 3704, 3734, 3720, 3707, 3721 and 3731, is a chambered line not run on the ground; and it appearing that there is no monument in the line but the quaking aspen in the south end in the line between the Robert Morris warrants and the Holland Land Company's survey; and it further appearing that all the returns of surveys for the above numbered warrants call for a straight line between them, running north and south, then the said line is to be located upon the ground by running the course called for in the return of surveys from the quaking aspen. *Answer:* We answer this point in the negative. [2]

4. The quaking aspen referred to in the foregoing point as being the south terminus of the line running south from warrant No. 3715 being gone, and there being no better evidence of its location shown, the location of the said quaking aspen upon the ground may be determined by dividing equally the distance between the other known monuments, the white oak at the southwest corner of 3724 and the cherry at the southeast corner of No. 3731, and if the jury believe from the evidence that the plaintiff's surveyors have correctly located said white oak and said cherry corners, then the quaking aspen is to be located midway between them, as the return of the survey of the said warrants Nos. 3724 and 3731 locate said quaking aspen at an equal distance from said white oak and from said cherry. *Answer:* This point is refused as applicable to the location of the line between 3725 and 3721. [3]

8. If the jury believe from the evidence that the land described in the plaintiff's writ lies west of a line running north from the quaking aspen, to the south line of warrant 3715, then the verdict of the jury should be for the plaintiff for the land described in the plaintiff's writ. *Answer:* Answered in the negative. [4]

Defendants' points and answers thereto among other were as follows:

1. Lines and corners having been run and marked on the ground for the interior warrants of the batch known as the Robert Morris warrants, the interior warrants are to be located without regard to the exterior lines and corners of the whole batch of Robert Morris warrants wherever it can be so done by the lines and corners marked on the ground for said interior warrants, and by their calls and returns of survey into the land office. *Answer:* Answered in the affirmative. [5]

2. Warrants 3704, 3734, 3720, 3707 and 3721, constitute a tier of the Robert Morris warrants, and warrants 3727, 3726 and 3725 constitute another tier of the same batch of warrants adjoining the first mentioned tier on the west, calling for each other and are connected by lines and monuments found on the ground. But the division line between said tiers of warrants was not run and marked upon the ground. The true method of locating said division line is to commence with 3704 and 3727, they having been surveyed first, and locate the division

line between them, then proceed south in the same manner with the successive warrants in the order of their dates of survey. *Answer:* Answered in the affirmative. [6]

3. It being undisputed that the east and north lines of 3704 were run and marked on the ground by the deputy surveyor in 1793, and their location now being undisputed, and also the location of the ironwood at the northeast corner and the maple at the southeast corner of said warrant, and no dispute as to the location of the northwest corner of 3727, the northeast corner of 3727, and the northwest corner of 3704 will be at a point which divides the distance between the ironwood and the northwest corner of 3727 proportionate to the distance called for on the north line of these two warrants and a line projected from said point so located south according to the course of the return of the surveys of said warrants, till it meets a line projected west from the maple southeast corner of 3704, according to the return of survey, will form a boundary line between said warrants, and said line projected on south according to the return of survey of the successive warrants, in the same manner, until it meets a line projected west from the ash at the southeast corner of 3721, according to its return of survey, will be the boundary line between each of the successive warrants to, and including warrants 3721 and 3725, the east line and the northeast and southeast corner of each of said warrants being indisputably located as run and marked on the ground; and if the jury find that the land in dispute is east of the line so projected, their verdict should be for the defendants. *Answer:* Answered in the affirmative. [7]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* among others were (1–7) above instructions, quoting them.

*D. I. Ball* and *E. R. Mayo*, with them *W. J. Knupp*, for appellant.—The landmarks returned in the returns of survey should have controlling influence in locating the lines in dispute.

Where a new survey is made calling for the lines of an older survey, there is no occasion to remark the trees: Covert v. Irwin, 3 S. & R. 288; Caul v. Spring, 2 Watts, 395; Ormsby v.

Ihmsen, 34 Pa. 470; Dreer v. Carskadden, 48 Pa. 45; Malone v. Sallada, 48 Pa. 430; Eister v. Paul, 54 Pa. 198; Salmon Creek Lumber Co. v. Dusenbury, 110 Pa. 446.

Natural or artificial landmarks, descriptive of land surveyed, constitute the true boundaries; and the courses and distances, if added, serve but to point towards the place: Cox v. Couch, 8 Pa. 147; Brolaskey v. McClain, 61 Pa. 163; Craft v. Yeaney, 66 Pa. 214; Burkholder v. Markley, 98 Pa. 40; Hall v. Tanner, 4 Pa. 245; Blasdell v. Bissell, 6 Pa. 258.

And this is equally so when these landmarks are supplied by proof of their former existence, where the marks or monuments are gone: Lodge v. Barnett, 46 Pa. 477; Morse v. Rollins, 121 Pa. 537; Hughes v. Smith, 4 Penny. 220; Carroll v. Miner, 1 Pa. Superior Ct. 455.

Later surveys are competent evidence on the question of location of earlier surveys: Northumberland Coal Co. v. Clement, 95 Pa. 126; Tyrone M. & M. Co. v. Cross, 128 Pa. 636; Fisher v. Kaufman, 170 Pa. 444.

One or the other of our theories of location is correct: Bloom v. Ferguson, 128 Pa. 362; Ferguson v. Bloom, 144 Pa. 549.

An adopted line or corner must be a real line or corner to become a monument of the lines of the adopting warrant.

There being neither mark nor call to control the line, it must be run according to its own courses and distances: Darrah v. Bryant, 56 Pa. 69; Glass v. Gilbert, 58 Pa. 267.

Where there is no landmark or call to control, the lines of an older survey cannot go beyond the official course and distance: Boynton v. Urian, 55 Pa. 142.

The proportional division between adjoining tracts of the surplus of land over the amount returned in the official surveys is an equal division: Parks v. Boynton, 98 Pa. 370.

*W. M. Lindsey* and *J. W. Bouton,* with them *F. D. Gallop, Edward Lindsey* and *J. O. Parmlee,* for appellees.—A careful reading of Ferguson v. Bloom, 144 Pa. 549, and Bloom v. Ferguson, 128 Pa. 362, shows that the principles applicable to the block system have no application to the location of these two warrants.

On the authority of Parks v. Boynton, 98 Pa. 370, and other cases, we fix this corner northwest of 3704 and northeast of

3727, by dividing the distance between the ironwood northeast corner of 3704, and the red oak, northwest corner of 3727, proportionately to the distance called for in the return of survey of these two tracts : Grier v. Penna. Coal Co., 128 Pa. 79.

In the case of Wilson v. Marvin, 172 Pa. 30, cited by counsel, the method of locating the chestnut was agreed to by both sides. The record does not state that there was any excess in the distance called for between the white oak and hemlock, and if there was no excess, that would undoubtedly be the correct way to locate it. The record in that case not showing any excess in distance, and no question having been raised to that method, it cannot be regarded as authority for the plaintiff's theory.

In addition to the cases already referred to, we cite the well considered case of Fisher v. Kaufman, 170 Pa. 444, as supporting the theory on which this case was tried by defendants and decided by the court below.

OPINION BY Mr. JUSTICE WILLIAMS, October 25, 1897 :

The plaintiff's right to recover in this case depends on the location of the boundary line between warrants numbers 3725 and 3721, in the name of Robert Morris warrantee. These warrants are part of a considerable number of surveys made in the name of the same warrantee, returned as made on consecutive days, and as located in a compact body. The deputy surveyor adopted a well marked district as the eastern boundary of the Morris lands. The Allegheny river and four small river surveys were adopted as the western boundary, and on the south the lands of the Holland Land Company were called for as an adjoiner all the way from the district line to the river. The north line of these surveys is the only continuous east and west line that is shown by the evidence to have been run upon the ground by the deputy surveyor in the location of the Robert Morris tracts. The space inclosed by the exterior lines just spoken of was subdivided into twenty-two separate tracts arranged in tiers. The first, second and third of these tiers going west from the district line contain six warrants each. The fourth tier reached to the river and to the old surveys and contained four warrants of which 3725 was the second in order going north from the line of the Holland Land Company. An original line was run along the west boundary of the first and

second tiers west from the district line, and corners marked for the several tracts upon both lines. The result of this work is that each of the twelve tracts in these two tiers has four original corners made for it on the ground, while the warrants in the third tier have an original east line and northeast and southeast corners, the location of which is apparently free from difficulty. The warrants in the fourth tier rest upon the river, and the four old river surveys at their western boundary. Their location is fixed therefore by reference to original marks and corners in their west lines as solidly as the place of warrants in the third tier is fixed by their east lines and corners. The situation of the twenty-two tracts, so far as the work of the surveyor is concerned, is shown by the accompanying diagram in which the dark lines indicate the lines run or adopted by the surveyor, the dotted lines those that are admitted to be chamber work.

It will be noticed that 3721 has an original east line with northeast and southeast corners, and 3725 has an original west line with northwest and southwest corners. The open line about which this controversy arises is the line which is at once the east line of 3725 and the west line of 3721. The plaintiff's theory for locating this line is to treat the whole body of the

Morris' surveys as a block, and run a line from the quaking aspen, the southwest corner of 3731 and the southeast corner of 3724 in the north line of the Holland Company, northerly between six and seven miles to the post, the northwest corner of 3704 and the northeast corner of 3727. This would locate the division line about sixty rods east of where the courses and distances of the survey of this individual warrant would place it and throw a large excess of land over the official quantity into the plaintiff's warrant 3725. The defendants assert that the original work on the ground is sufficient to locate each tract in the entire body of Morris surveys, and that the conditions do not exist which authorize the application of the rules relating to block surveys. Nevertheless, the defendants locate this division line by the same method adopted by the plaintiff, with the difference that they would start from the place of the post at the north, and run southerly to a point some sixty rods further west at the line of the Holland Land Company than the plaintiff's location of the quaking aspen, thus fixing the course and position of the line, not by the surveys of these two warrants, but by marks made or adopted in the lines of exterior surveys. The learned judge of the court below adopted the defendants' position that these surveys did not constitute a block, and that the interior lines were not to be located by the rules applicable to a block; at the same time he adopted also the defendants' method of running the division line, by starting at the post on the north and running southerly across the Robert Morris lands to an assumed common corner for numbers 3724 and 3731, in the north line of the Holland Land Company. This would put the large excess of land within the lines of 3725 and 3721, or most of it, into the defendants' warrant 3721. The small diagram* will show the relative position of the two lines thus contended for, having a common starting point on the north, and diverging from each other until at the Holland Land Company's north line they are over sixty rods from each other. Neither line rests on any assured original work at its south end, made for or adopted as the common corner of Nos. 3724 and 3731. The only agreed point on either line is the common terminus at the north.

---

* This diagram is shown on page 83.

It is apparent from what has now been said that the controll-
ing question in this case is whether either of these lines, and if
either, then which of them, is entitled to consideration.  In
popular use the phrase "a block of surveys" means any con-
siderable body of contiguous tracts surveyed in the same war-
rantee's name, without regard to the manner in which they were
originally located.  In legal use the same phrase is employed to
describe a body of contiguous tracts located by exterior lines, but
not separated from each other by interior lines.  The Robert Mor-
ris tracts would have constituted "a block" in the legal sense if
only their external lines had been on the ground.  The interior or
division lines separating the body of land in the block into sep-
arate tracts would, in that case, have been ascertained by refer-
ence to monuments originally made or adopted in the exterior
or inclosing lines, or by laying off the tracts by courses and
distances in accordance with the returns of survey.  But the
interior lines of the Robert Morris warrant are not left to be

ascertained in this manner. Two tiers of tracts directly west of the district line, containing six tracts each, had all their corners marked upon the ground by the surveyor, which fixed absolutely the position of all their lines. The lines of these tracts must now be run in accordance with the marks made in 1793, as they afford the best evidence of how and where the surveyor placed them. In the absence of monuments of the original surveys, calls for adjoiners, courses and distances and the legal presumption that the surveys were made as they were returned into the land office are to be resorted to in order to locate the line of any given survey: Ferguson v. Bloom, 144 Pa. 549. In the case of interior members of a block the rule is that marks made by the surveyor for any tract in the block are evidence for the purpose of fixing the lines of any other tract in the same block: Fisher v. Kaufman, 170 Pa. 444. But where lines are run and marks made by the surveyor for a particular tract sufficient to fix its place on the ground, the general rule is that its place must be found by tracing the footsteps of the surveyor. The rules applicable to the location of individual warrants are to be followed in such a case, and those applicable to the interior tracts of a block have no application. If many of the tracts inclosed by exterior lines are without marks upon their own lines, made for them, still, if one or more of such tracts has original marks on its lines of an earlier date, which were adopted by the surveyor for the location of the tract in question, such adopted work will control the location of the tract in the same manner as if the marks had been made by the surveyor instead of being adopted by him: Bloom v. Ferguson, 128 Pa. 362. We come now to inquire how the division line shall be run between 3725 and 3721. The Robert Morris surveys do not constitute a block in the legal sense of that word. There are on the other hand definite and ascertainable monuments of the original survey made or adopted for each of the twenty-four tracts, including 3725 and 3721. Such being the case we should retrace the footsteps of the surveyor as nearly as the marks he has left behind him will permit. Turning then to the returns of survey we find that the location of the twenty-four tracts upon the ground was the work of five different days by the deputy surveyor. The four warrants in the southeast corner of the body, viz: Nos. 3705, 3733, 3732 and 3714 were

returned as having been surveyed on July 30, 1793. On the next day, July 31, the three warrants north of 3733 and the three warrants north of 3732 were surveyed. The two tiers of warrants directly west of the district line were thus put upon the ground with four original corners made or adopted for each of them. The survey was suspended at this point until August 6. The surveyor then seems to have resumed work at the Ironwood, the northwest corner of No. 3711, and to have run thence to the Allegheny river, and down the river far enough to enclose No. 3727. He then plotted in the interior lines, and so located 3704, 3734, 3720 of the third tier and 3727 of the fourth tier. These were locations of individual surveys made by work on the ground peculiar to them, which fixed their general position, and afford the material for fixing the proper location of their open lines. On August 7, the surveyor resumed work, presumably continuing down the river to the old surveys, and then tracing their course and adopting the marks upon the line of 873 to the point where he plotted the intersection of the south line of No. 3726 with the east line of 873. He then plotted in the open lines of No. 3707 and 3721.

Diagram No. 3 shows the lines run, adopted or plotted, up to the close of August 7, 1793, and the unappropriated space still open for the work of the following day, and within which

Nos. 3725, 3724, and 3731 were located on that day.   On August 8, he appears to have followed down the lines of the river surveys to the Holland Land Company's north line at the white oak, the southwest corner of 3724, and plotted the remaining lines of 3725 and 3724 of the fourth tier, and of 3721 of the third tier.   This was a good individual location of each of the twenty-four tracts.   To separate the tracts belonging to the third tier from those belonging to the fourth tier we should go upon the original north line and find the post set by the surveyor for the northwest corner of 3704 and the northeast corner of 3727.   A line south from this point to intersect a line running west from the white oak, the southeast corner of 3704, would fix the southwest corner of 3704 and the position and direction of the division line, which if not influenced by work on the ground would continue along the west side of each successive warrant in the third tier to the aspen in the north line of the Holland Land Company.   But the post is not found at the common corner of 3727 and 3704 in the north line of these surveys.   The north line of both warrants overruns in length the official distance.   Under such circumstances the excess of distance between the Ironwood and the Allegheny river must be divided proportionally between warrants 3727 and 3704 and a common corner for them established for them in this manner. This point fixed, and the survey of 3727 and the three warrants belonging to the third tier which were located by the deputy surveyor become at once certain, and if no disturbing monument is found to deflect this line it would continue south along the returned courses and distances to the southern boundary of the Morris surveys.   But if so continued no trace of the aspen is found at the southern end of the line.   As we understand the testimony of the surveyors the position which the aspen occupied when the surveys were made is not now known. . The place of the cherry, the southeast corner of 3731, seems to be known, and its position is such as to give an easterly inclination to the east line of the tract, but the influence of this irregularity does not necessarily affect the west line of any other tract than 3731.   The aspen being no longer on the ground, and the place where it once stood being unknown, its place must be fixed by dividing the surplus length of line proportionally between 3724 and 3731, in the same manner as was done in fixing

the position of the post, the common corner of Nos. 3727 and
3704. The west line of 3731 should be run from the point so
fixed as the place of the aspen, north to the place of the post, the
southwest corner of 3721 and southeast corner of 3725. This
may deflect the division line between the two warrants resting
on the line of the Holland Land Company on the south from the
general course, or the division line between the third and fourth
tiers of warrants north from this point, because each warrant
will upon this plan be located by the marks that are peculiar to
it, which are enough in number and sufficient in character to
fix the position and the lines of each of the Morris tracts.

The line now in controversy will therefore be found by ascer-
taining the place of the post, the common corner of 3704 and
3727, in their south line, and following the returns of survey
in the location of the four warrants surveyed on August 6, 1793.
This done, the three warrants surveyed on August 7 should be
located according to their calls and the original work upon their
lines. This would fix the lines of 3721. Its eastern line would
be the western line of 3732. Its northern line would be the
southern line of 3707 for which it calls. Its southern line
would be run according to its courses and distances westerly
from the fallen ash, the southwest corner of 3732, and its west-
ern line would be, unless controlled by some monument made
for it, of which there is no evidence, continuous with the west
line of its northern adjoiner No. 3707. No. 3725 was put upon
the ground one day later, and has the western line of 3721 as
its eastern boundary. As against 3725 the lines of 3721 were
on the ground, and the lines of the younger survey must con-
form to those of the older. When the lines of the several sur-
veys made on August 6 and 7 are ascertained by following the
surveyor's work southerly from the place of the post, the north-
west corner of 3704, to the post and stones, the southwest corner
of 3721, the lines of the surveys made on August 8, so far as
they call for the lines of 3721, must follow them, and the south-
west corner of 3721 is a common corner of 3725, 3724 and 3731.
The division line between 3724 and 3731 must be run from this
common corner to the place of the aspen. Any deflection in
the division line which this may cause must be attributed to the
fact that 3731 has three original corners, and that the original
work must control both calls and courses and distances that are

not in harmony with it. The deflection, if any, being due to the work on the lines of this survey (No. 3731) will not extend to or affect the lines of any warrant north of it. For this there are, as have been pointed out, two good reasons, first, the warrants north of it were first located and have seniority ; next, if this were not so, the disturbing monument is peculiar to this warrant and No. 3714, on the east side of it, and its influence cannot extend beyond the lines of the tracts to which it belongs, since all the other tracts in the entire body of the Morris surveys must be located by the original work made or adopted for them, respectively. The line from the aspen north to the common corner of 3731, 3725 and 3724 is not before us. What is said of it here is by way of showing that it has no relation to the line now in controversy, but must be adjusted on principles peculiar to it whenever it may come in controversy. As it does not appear where the disputed line would be if located in accordance with this opinion, it becomes necessary to reverse the judgment in this case and direct a venire facias de novo to issue, that its position may be fixed in the manner indicated herein.

The judgment is accordingly reversed and a venire facias de novo awarded.