## Smith *et al. versus* Vasbinder.

1. As a general rule, after a warrant has been executed and the survey returned into the Land Office, a re-survey on the same warrant cannot be made without a fresh order; as to that warrant the deputy-surveyor is *functus officio*.

2. A patent is not operative against rights of a third person existing before it was issued.

3. One purchasing after the issuing of the patent, whose whole claim originates after its date, cannot search into the imperfections of the previous title of the patentee.

[Smith *v*. Vasbinder.]

4. Such patent may be impeached if tainted by fraud, procured by imposition or in entire excess of the proceedings on which it is founded.

5. The return of a survey of a warrant in 1793, was made in 1794; there was no record in the Land Office of its acceptance. In 1837 Vasbinder made a settlement on the survey and marked his boundaries; in 1855 Clover, then owner of the original warrant, located it, including 26 acres, not within Vasbinder's boundaries, and obtained a patent. In 1867 Vasbinder took out a warrant for the land he claimed by settlement, included in his survey the 26 acres, and in 1873 obtained a patent for the whole. *Held*, that Clover had title to the 26 acres.

6. Balliot *v*. Bauman, 5 W. & S. 155, affirmed.

November 13th 1874.   Before AGNEW, C. J., SHARSWOOD and MERCUR, JJ.   GORDON, J., did not sit, having been of counsel in the case.

Error to the Court of Common Pleas of *Jefferson county:* Of October and November Term 1874, No. 127.

Alexander Smith and others brought an action of ejectment on the 30th of November 1870, against Andrew Vasbinder, for 518 acres of land in Warsaw township.

The case was tried, May 21st 1873, before Trunkey, P. J., of the Twenty-eighth district.

The facts in the case are as follows:—

On the 24th of December 1873, warrant No. 4546 for 1100 acres "in district No. 6 in the late purchase on the east side of the Allegheny river," issued to John Nicholson. On this warrant Ennion Williams, deputy-surveyor, on the 1st of April 1874, surveyed 1100 acres with allowance of six per cent. This survey was returned into the Land Office by Williams on the 2d of August 1794. The records of the surveyor-general's office show no further action on this survey.

In 1837 and 1838 the defendant made a settlement on the same survey, and marked his boundaries, *excluding* a portion of it containing about 26 acres. On the 17th of August 1855, Seth Clover became the owner of the Nicholson warrant No. 4546, and on the 24th of September had it located on the land in dispute, duly returned and accepted. A patent for the land was issued to Clover, December 28th 1855. On the 27th of September 1867, the defendant took out a warrant for the land he claimed by settlement right, and included in the survey under the warrant, made January 18th and 19th 1870, by James Caldwell, the 26 acres which he had excluded when he marked the boundaries of his settlement.

On the 13th of February 1868, the plaintiffs became the owners of Clover's title. On the 22d of April 1873, a patent issued to the defendant for the land set out in his survey, including the 26 acres. The only question considered in the Supreme Court was as to the title to these 26 acres.

The defendant's fourth point was:—

The Nicholson warrant was filled by the survey made thereon

[Smith v. Vasbinder.]

in 1794, and the subsequent survey and patent to Seth Clover conveys no title to him or his vendees, and hereon plaintiffs cannot recover.

To this the court answered:—

" This point, if affirmed, is conclusive against the plaintiffs' right to recover, and is reserved. You will determine upon the facts under the instructions given, and if you find for the plaintiffs, your verdict will be subject to the opinion of the court as to their right to recover upon the point reserved."

The jury found for the plaintiffs "for the land included by defendant in the official survey made by J. Caldwell January 18th and 19th 1870, which was outside of the original line which was marked by defendant, being about 26 acres on the north-west corner, as shown by plot filed, and for the defendant all the land included in said official survey except 26 acres, subject to the opinion of the court as to plaintiffs' right to recover upon the point reserved."

The court afterwards entered judgment on the reserved point for the defendant, *non obstante veredicto.*

The plaintiffs took a writ of error and assigned for error, entering judgment for defendant on the reserved point.

*G. A. Jenks,* for plaintiffs in error.—Although the power of a deputy-surveyor is exhausted by the return of a survey, the surveyor-general may either accept or reject it: Oyster *v.* Bellas, 2 Watts 397. If the surveyor-general, without formal action on the original return, accepted another survey and a patent was issued, this amounted to a rejection of the first survey: Light *v.* Woodside, 10 S. & R. 23. The defendant's claim arose *after* the issuing of the patent to Clover, and he cannot take advantage of imperfections in Clover's title previous to his survey: Balliott *v.* Bauman, 5 W. & S. 150; those were between the Commonwealth and the patentee; a third person had nothing to do with it: Delaware & Hudson Land Company *v.* Dimock, 11 Wright 393.

*A. L. Gordon* (with whom were *A. C. White* and *W. L. Corbett*), for defendant in error.—After a survey has been returned, a second survey is void: Deal *v.* McCormick, 3 S. & R. 346; Hughes *v.* Stevens, 7 Wright 197.

Chief Justice AGNEW delivered the opinion of the court, January 4th 1875.

The finding of the jury under the instructions given by the court establishes the fact that at the time of the survey and patent to Seth Clover, the defendant (Andrew Vasbinder) had no title to the 26 acres found for the plaintiff. This portion lay outside of the boundaries marked by the defendant as the limit of his settle-

27 P. F. SMITH—9

[Smith *v.* Vasbinder.]

ment and improvement. The John Nicholson warrant No. 4546 was filled by survey in 1794, and returned into the Land Office. Whether this survey was accepted or not, is uncertain. The question reserved was whether the subsequent survey for Seth Clover, the alleged owner of this same warrant in 1855, and patent to him in the same year, gave Clover any title. The court thought they did not, and gave judgment for the defendant for the 26 acres, *non obstante veredicto.* In this we think there was error. The general rule undoubtedly is, that after a warrant has been executed, and the survey thereon returned into the Land Office, a re-survey cannot be made on the same warrant without a fresh order for this purpose. The authority of the deputy-surveyor is *functus officio* when he has returned the survey. Hence a re-survey on the same warrant, after a return of a survey, is held to be void against an intervening claimant of land not within the original survey: Drinker *v.* Holliday, 2 Yeates 89; Deal *v.* McCormick, 3 S. & R. 343; Oyster *v.* Bellas, 2 Watts 397; Cassidy *v.* Conway, 1 Casey 240. This was not the real question in the reserved point before us. Here the finding of the jury having established that there was no intervening title, legal or equitable, when the re-survey was made for Seth Clover, and the patent granted to him, the only question was whether the patent was good against the subsequent claim of title by the defendant. That it was, is clear according to authority as well as principle. Without pretending to collect and state all the decided cases, it will be found that the following recognise or incidentally refer to the exception as to the effect of a patent irregularly issued as against claimants subsequent to its date: Nicholas *v.* Holliday, 2 Smith's Laws 155-7; Trubett *v.* Nichols & Vance, Id. 158; Attorney-General *v.* Grantees, under Act of 1792, 4 Dallas 244; James *v.* Betz, 2 Binn. 12; Bixler *v.* Baker, 4 Id. 218, 219; Penrose *v.* Griffith, Id. 231; Downing *v.* Gallagher, 2 S. & R. 455; Brown *v.* Galloway, Peters' C. C. R. 296-7; Whitmire *v.* Napier, 4 S. & R. 290; Diggs *v.* Downing, Id. 348. The following cases are directly on the point or affirmatory of it: Light *v.* Woodside, 10 S. & R. 23; Balliot *v.* Bauman, 5 W. & S. 155; Delaware & Hudson Canal Company *v.* Dimock, 11 Wright 397. In Balliot *v.* Bauman, Justice Sergeant states the law as to patents succinctly and clearly. "A patent is not operative against the rights of a third person existing before the issuing of the patent. He may show that his right is better than that of him who obtained the patent, and for that purpose may inquire into the prior title of the patentee, whether by warrant, survey, settlement or otherwise, and show that his equitable title is better. But one who purchases after the issuing of the patent, and whose whole claim originates subsequently to its date, is not at liberty to search into the imperfections in the previous title of the patentee. If there

[Smith v. Vasbinder.]

was any such which the Commonwealth has chosen to overlook, a third person has nothing to do with it. The patent conveys the full legal title of the state, and is as to her, a merger of the previous proceeding and a waiver of informalities; it is, moreover, full and express notice to every person whatever, that the land has been granted away and is not vacant." The generality of this language was not intended, however, to be extended beyond the subject under consideration by Justice Sergeant. Hence a patent tainted with fraud or procured by imposition, or in entire excess of the proceedings on which it is founded, may be impeached: Burd et al. v. Seabold, 6 S. & R. 140; Attorney-General v. Grantees, 4 Dallas 244; Bixler v. Baker, 4 Binn. 213; Delaware & Hudson Canal Company v. Dimock, 11 Wright 393. That the Commonwealth herself may inquire into a patent surreptitiously obtained, by scire facias against the patentee, and set aside for fraud, was decided in Philadelphia a few years since in an unreported case. Seth Clover's patent having been issued upon warrant No. 4546, before any title had accrued to the defendant, judgment on the reserved point ought to have been entered for the plaintiffs for the 26 acres found for them. Therefore the judgment is reversed, and judgment is now entered for the plaintiffs on the verdict with costs, and the record is ordered to be remitted for execution.