F. F. BUSHEY v. SOUTH MOUNT. M. & I. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF CUMBERLAND COUNTY.

| 136 | 541 |
|-----|-----|
| 203 | 5550 |
| 136 | 541 |
| e204 | 8284 |
| e204 | 4284 |

Argued April 30, 1890—Decided October 6, 1890.
[To be reported.]

1. The delivery of a patent for a tract of land by the commonwealth is an admission that all previous formalities and requisites have been complied with, and passes the title to the grantee. The patent is therefore evidence, prima facie, of a survey and return in accordance with the description contained in it.

2. A plaintiff having shown an application for land, a warrant issued thereon, and a patent to his grantor for the land described in the warrant, has a prima facie case on which he may rest without showing the return of the survey, made under the warrant, into the land office.

3. The rule that, after the lapse of twenty-one years, the law presumes that a survey regularly returned was made as returned, cannot locate a survey until some monument of it can be found on the ground. Whether such marks exist is a question of fact. If one or more such marks be found, the law will locate the survey by the aid of the legal presumption.

4. If the monuments called for are the lines of older tracts, as adjoiners, such older tracts must be located, before the legal presumption can be invoked; but, as soon as one or more of the tracts called for is located, the presumption can be resorted to to close the survey.

5. If the survey call for marks or other monuments upon its own lines or at its corners, and for adjoiners, and the marks when found are inconsistent with the calls for adjoiners, the marks must prevail, as they are. the official foot-prints of the surveyor on the ground: Grier v. Coal Co., 128 Pa. 74; Bloom v. Ferguson, 128 Pa. 362.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 367 January Term 1890, Sup. Ct.; court below, No. 336 April Term 1887, C. P.

On March 27, 1887, F. F. Bushey brought trespass q. c. f.

Statement of Facts.

against the South Mountain Mining & Iron Company, to recover for timber cut and removed by the defendant from the plaintiff's lands.  The pleas were liberum tenementum and not guilty.

At the trial on November 29, 1889, the plaintiff, as evidence of title to the lands upon which the alleged trespass was committed, put in evidence a certified copy, from the office of the Secretary of Internal Affairs, of an application by William Morrison, dated January 22, 1848, for 100 acres of land "adjoining lands of Benjamin Blackford on the west, Robert Duncan on the north, John Dixon on the east, and the Adams county line on the south; " also a certified copy of the warrant issued upon said application, dated the same day and with the same description.   The plaintiff then offered a paper, purporting to be a copy of the original survey under said application and warrant, with proof that it was in the handwriting of Abraham Lamberton, the county surveyor for Cumberland county in 1853, now deceased; that since it was delivered to William Morrison it had been in his possession and that of his grantees down to the plaintiff, and that the marks and calls mentioned in said copy existed on the ground; this, as evidence that said warrant had been executed and returned to the land office; also, the patent of the commonwealth, to A. F. Gitt, dated March 17, 1874; to be followed by deeds carrying the legal title to 24 acres and 57 perches of the tract, being the land in dispute, from William Morrison through A. F. Gitt to the plaintiff.

The defendant objected to these offers, that the copy of the survey offered was unofficial, and that without an official survey and return thereof the patent of the commonwealth was without support and conveyed no title which could be carried by the conveyances to the plaintiff.

By the court: Taken as a whole, we think it is evidence of title in the plaintiff; exception.[1] *

The plaintiff then followed with the testimony of clerks, from the office of the secretary of internal affairs, showing searches for the original return of the warrant of survey issued January 22, 1848, and that it could not be found, but that entries upon the books of the office, certified copies of which were produced, showed the issuance of the warrant on its said

* See order made at beginning of the charge to jury.

date, and that a " return for patenting" had been made in the
usual manner on March 17, 1874, the "acres returned" being
49 acres 27 perches.

The plaintiff having rested, the controversy which followed
may be illustrated by the following plan, drawn however with-
out regard to the actual courses and distances shown by the
office drafts.

The cutting of the timber in the quantity and in the place
claimed by the plaintiff was not disputed, the only question in
controversy being as to where the Blackford, called for by the
Morrison on the west, was located on the ground, and whether
its lines as so located embraced the place where the timber
was cut.

The southeast corner of the Dobson improvement, the eldest
of the surveys as to which there was testimony, was known
and admitted. The point where the east line of the Thorn-
burgh, which was surveyed on March 17, 1786, on a warrant
dated September 23, 1785, and called for by the Blackford,
which was surveyed January 3, 1795, on a warrant dated Octo-
ber 1, 1792, struck the Adams county line, at a chestnut there
called for, was disputed by the testimony. The distance of
the foot of this line from the Dobson improvement, as given
by the Thornburgh survey, was 74 rods east of the southeast cor-
ner of the Dobson; yet the plaintiff claimed from the testi-
mony adduced that no chestnut, (nor the remains of one), was

found at that distance from the Dobson, but was found at a less distance, to wit, 24 rods east of the southeast corner of the Dobson, and that the call for 74 rods was doubtless a mistake in the figures for 24 rods. The length of the south line of the Blackford from the foot of the east line of the Thornburgh, wherever the latter was, to the southeast corner of the Blackford, where there was a call for a pine tree, was admitted to be 285 rods; so that if the foot of the east line of the Thornburgh was at the point claimed by the defendant, to wit, 74 rods east of the southeast corner of the Dobson, then the timber cut by the defendant was upon the Blackford, and the plaintiff could not recover. On the other hand, if the foot of that line was put 50 rods nearer to the Dobson when it was located, the timber cut was upon plaintiff's tract, and he was entitled to a verdict in his favor.

At the close of the case, on motion of the defendant, the court, SADLER, P. J., withdrew from the jury the consideration of the draft alleged to be in the handwriting of Abraham Lamberton, and the testimony of certain witnesses as to the location of the lines and corners of the said draft on the ground, and charged the jury in part as follows:

In order to recover, it is incumbent upon the plaintiff to show possession of the premises, or title to the same. His claim of title to the land, from which the timber was taken, is founded on the application for a warrant granted by the commonwealth to William Morrison, bearing date January 22, 1848. Through conveyances of Morrison and wife and their grantees, the portion of land in dispute, consisting of three acres and seventy-three perches vested in F. F. Bushey, the plaintiff, who became a grantee. A patent was granted for this land, on March 17, 1874, to A. F. Gitt, which includes the land in dispute.

The defendants are the owners of a number of tracts of land in the neighborhood of where the timber was cut, and they insist that the land on which it stood is included within one which was patented to Benjamin Blackford on a warrant dated October 1, 1792, and which was surveyed on January 3, 1795. It also appears that a warrant was taken out for the Thornburgh on September 23, 1785, and survey made March 17, 1786; and one by Duncan on February 24, 1794, and survey made Janu-

ary 3, 1795, the former lying on the west and the other on the northeast. These become important matters for consideration, from the fact that the Thornburgh is the older survey, and is called for by the Blackford on the west, and the other was surveyed on the same day and adjoins the Blackford, the division line extending up to the end of the ·disputed line.

The matter for your determination will be to ascertain, if you can, with reasonable certainty, the location of the Blackford survey, and whether or not it includes the land claimed by F. F. Bushey, on which the timber was cut. In passing upon this question, you must be controlled by certain rules which have been settled by the ultimate legal tribunal of this state, as follows:

It is declared that a junior survey must give ·way to a senior one. It is the rule that, where a warrant is located on the ground and duly returned, it has precedence over subsequent applications for warrants on which surveys may be made, or even for which patents may be granted. So, although the junior survey may, as is often the case, include a part of an older survey, it does not give any title to the older, even if a patent happens to be granted by the commonwealth. Again; in ascertaining the boundaries of a tract of land, the marks of the survey on the ground are paramount and controlling, and in the absence of marks, calls in the deed or grant for natural or artificial boundaries are to prevail over courses and distances. If there be neither evidence of actual survey, that is, the boundaries traced, marked lines, not calls, then the courses and distances are to govern. That is, if all evidence of lines run on the ground are gone, and the boundaries named in the drafts remain, then the courses and distances run must control you. Where monuments and corners are to control courses and distances of a survey, that is, limit the lines or change the courses and distances, it should appear to the satisfaction of the jury that they were of about the same age as those on the original survey which it is proposed to limit or control by these monuments or calls. . . . .

The southern line of the Blackford is identical with that of the line dividing the counties of Cumberland and Adams. According to the official survey it is 285 perches in length. It is conceded that the Blackford commences at and is bounded by

Charge of Court below.

the Thornburgh on the west. The drafts, official and other-
wise, show that the former, the Blackford, extends eastwardly
the said distance of 285 perches from the Thornburgh. Where
this line begins and where it terminates is a most important if
not the chief consideration in the present case.

The defendant insists that the eastern line of the Thornburgh
is 74 perches distant from the Dobson improvement, and that
this is the dividing point between the Blackford and Thorn-
burgh; and that by giving the Blackford the distance marked
on the official draft and survey, 285 perches, it extends east-
wardly to a point which includes the Morrison tract and the
land of Bushey, and that the Blackford warrant, survey, return
of survey and patent, being much older than that of Morrison,
it has priority over the latter and must prevail against the title
of the plaintiff who claims through said Morrison. . . . . On
the other hand, the plaintiff contends that the true point to
start the Blackford is farther west, and at a point where the
division line between the Thornburgh and Blackford, as run
by surveyors employed by him, intersects the county line.

—Having reviewed the testimony of the parties respectively
as to surveys made for them, in search of the lines and corners
of the Blackford, the court answered certain points for instruc-
tion as follows:

The plaintiff requests the court to charge:

1. The warrant of January 22, 1848, and survey thereon by
Abram Lamberton, deputy surveyor for Cumberland county,
now lost, but returned June 14, 1853, as evidenced by the
records of the land office, and the patent deed of March 17,
1874, place the title of the commonwealth to the 49 acres and
27 perches, therein described, in A. F. Gitt; and the interme-
diate conveyances in evidence vested the title to the 3 acres
and 37 perches, on which the timber was cut, in the plaintiff,
unless the locus in quo was within the lines of the Blackford
survey; and if the jury believe it was not within these lines,
the plaintiff is entitled to recover.

Answer: We are of the opinion that the warrant of Janu-
ary 22, 1848, taken in connection with the patent of March 17,
1874, placed the title of the commonwealth to the 49 acres and
27 perches in A. F. Gitt, and the intermediate conveyances in
evidence vested such a title to the 3 acres and 37 perches, on

Charge of Court below.

which the timber was cut, in the plaintiff; that, unless the locus in quo was within the lines of the Blackford survey, and if the jury believe that this land was not within the lines of the said Blackford, there may be a recovery by him.[6]

The defendant requests the court to charge:

1. The corner of the Dodson improvement being well known, and the location of the Joseph Thornburgh being fixed by that improvement, the proper way to ascertain the location and extent of the Blackford is to begin at the southeast corner of the Thornburgh, that is, 74 perches east of the Dobson improvement, and then measure the full line of the Blackford, 285 perches, eastward; and the Blackford is entitled to this full length, and this measurement would place the lines of the Blackford beyond any cutting done by defendant, and plaintiff cannot recover.

Answer: We are of the opinion that Blackford is entitled to have the full length of the line, to wit, 285 perches, under the testimony in the case. It appears to be conceded that the Dobson improvement is well known, and that the Thornburgh is fixed by this improvement. It is entirely proper, in ascertaining the location and extent of the Blackford, to begin at the southeast corner of the Thornburgh on the county line, and this will be 74 perches east, unless this distance is controlled by improvements on the ground. The plaintiff asserts that such is the case, and the official courses and distances of the Thornburgh and Blackford run from the acknowledged corner of the Duncan, Blackford, Thornburgh and Foulke. The point where the Thornburgh terminates and the Blackford commences is in dispute between the parties, plaintiff and defendant. The defendant insists that this was 74 perches from the Dobson Improvement, while on the other hand the plaintiff contends that the testimony establishes the fact that it was about 50 perches less. Where the southern line of the Thornburgh intersects the county line, we leave for your determination.[2]

3. The copy of the paper, in the handwriting of Abram Lamberton, is an unknown, unofficial draft, which will not give title, or justify a patent to be issued upon it; and the patent in evidence, being granted upon the deed to Gitt described from an unofficial survey, was granted without right and gives no

Charge of Court below.

title as against the defendant, the owner of the Blackford, so as to support an action of trespass.

Answer: The Lamberton draft will not give title; but we refuse to instruct you that the patent was granted without right, and that it gives no such title to the plaintiff as to enable him to support an action of trespass against the owner of the Blackford, if the land in dispute was not included within the limits of the Blackford, as contended for by the plaintiff.[3]

4. The Morrison application and warrant calling for the Blackford on the west, when officially located by a proper survey, must necessarily be surveyed east of the Blackford line, and so as not to interfere with the Blackford title. As no official survey was ever made on this Morrison warrant, and laid on the ground in controversy, so as to conflict with the Blackford line, or title to the Blackford land, there can be no recovery by the plaintiff in this action.

Answer: The Morrison, calling for the Blackford on the west, it must be located east of the latter; and, if it conflicts with the Blackford, which is the elder, and the land in controversy lies on the Blackford, there can be no recovery in this action.[4]

5. The deed from Morrison and wife to Gitt, dated in 1864, conveying the land by courses and distances, as described in it and taken from an unofficial survey, did not convey a legal title to the land to Gitt such as would enable him or his grantee to maintain this action of trespass; and, as the patent does not locate the land, but only defines what it contains when properly located, it furnishes no additional legal right to the plaintiff to maintain trespass, and he cannot recover.

Answer: We refuse to affirm the point as stated.[5]

The jury rendered a verdict in favor of the plaintiff for $355.43, with interest from May 1, 1887, single damages. On February 26, 1890, on motion, it was ordered that judgment be entered on the verdict for $1,066.49, being treble damages. Thereupon, the defendant took this appeal, assigning for error:

1. The admission of the plaintiff's offer.[1]

2–5. The answers to the defendant's points.[2 to 5]

6. The answer to the plaintiff's point.[6]

*Mr. S. Hepburn*, for the appellant:

Arguments.

1. The plaintiff, Bushey, had not such title, under the Morrison warrant and patent to A. F. Gitt, as would justify a recovery in trespass against the defendant, the owner of the Blackford lands. There was not one spark of proof that the Morrison warrant was ever filed with the surveyor of the district, as required by the proprietaries and after them by the commonwealth: Sergeant's Land Laws, 167; act of April 8, 1785, 2 Sm. L. 317; act of April 3, 1792, 3 Sm. L. 70; Barton v. Smith, 1 R. 406; Schnable v. Doughty, 3 Pa. 398. A warrant without a survey is a mere license or authority to do a particular thing for the warrantee's benefit, not a grant of the land itself: Heath v. Knapp, 10 W. 406; Shoemaker v. Huffnagle, 4 W. & S. 442; Gregg v. Patterson, 9 W. & S. 205. An official survey under the warrant, and a return of it, are indispensable to the granting of a patent, and without it no title is conveyed by the patent: Kelly v. Graham, 9 W. 117; Delaware etc. Canal Co. v. Dimock, 47 Pa. 397; Hagerty v. Mathers, 31 Pa. 348; Ormsby v. Ihmsen, 34 Pa. 471; Northumberland Coal Co. v. Clement, 95 Pa. 138; Payne v. Howard, 107 Pa. 579; Strauch v. Shoemaker, 1 W. & S. 173.

2. In the return of the Thornburgh survey, made March 17, 1786, the older survey called for by the Blackford, there is given for its south line 74 perches on the county line, east from the southeast corner of the Dobson.. Adding to that the 285 perches on the county line, given to the Blackford in its survey made January 3, 1792, and calling for the Thornburgh, and there was no cutting done outside the Blackford. A return of survey into the surveyor general's office, and a lapse of twenty-one years afterward, without any exception to it, is conclusive evidence that it was regularly made as returned: Nieman v. Ward, 1 W. & S. 68; Ormsby v. Ihmsen, 34 Pa. 462; Mathers v. Hegarty, 37 Pa. 64. In the latter case, the true rule in reference to the location of a tract returned surveyed is stated. When the location of a tract is more than sixty years old, it must be located by its calls, especially when adhering to them preserves the distances, figure, quantity, etc.; and that such a location causes an interference with a junior survey is of no consequence whatever. All the testimony, therefore, offered by the plaintiff to repel the legal presumption which fixed 74 perches from the Dobson for the Thornburgh, and 285 perches

on the county line east for the Blackford, should have been rejected, which would have left no fact in dispute for the jury : Cross v. Tyrone Co., 121 Pa. 398.

*Mr. A. B. Sharpe* (with him *Mr. J. W. Wetzel* and *Mr. David Wills*), for the appellee :

1. The copy of the survey, found among the papers of the plaintiff, should have been admitted as some evidence of boundary : McCausland v. Fleming, 63 Pa. 36 ; Sample v. Robb, 16 Pa. 319. But the court below thought otherwise, and the plaintiff offered certified copies of the office records, which put it beyond a doubt that the survey had been made and returned. This was the only proof obtainable, and that it was adequate is clear upon authority : Oliphant v. Ferren, 1 W. 57 ; Anderson v. Keim, 10 W. 251 ; Fox v. Lyon, 27 Pa. 9 ; Weidman v. Kohr, 4 S. & R. 174 ; Goddard v. Gloninger, 5 W. 209 ; Struthers v. Reese, 4 Pa. 129 ; Vastbinder v. Wager, 6 Pa. 339. Apart from all this, the patent issued to A. F. Gitt on March 17, 1874, was prima facie evidence of title and of survey : James v. Betz, 2 Binn. 12 ; Bixler v. Baker, 4 Binn. 214 ; Downing v. Gallagher, 2 S. & R. 455 ; Allison v. Rankin, 7 S. & R. 269 ; the last utterance on the subject being Olewine v. Messmore, 128 Pa. 481.

2. No one pretends to interfere with the " Blackford survey returned into the land office with its marks and monuments on the ground still there." The single question is as to the proper location of its south line, conceded to be 285 perches in length. The defendant insists that it began 74 perches from the Dobson improvement, while, on the other hand, the plaintiff contends that the testimony establishes the fact that this distance was about 50 perches less. The chestnut stump on the county line about 24 rods east of the Dobson, the plaintiff claimed from the testimony to be a relic of the chestnut corner at the intersection of the Thornburgh and Blackford line with the county line. Yet the defendant would set this aside, because of a call on the Thornburgh for 74 perches east of the Dobson, with nothing to show where the Thornburgh terminates and the Blackford begins. But the legal presumption that lines are to be run as returned is controlled by work found on the ground applicable to them : Grier v. Penna. Coal Co., 128 Pa. 83 ; Bloom v. Ferguson, 128 Pa. 380.

Opinion of the Court.

OPINION, MR. JUSTICE WILLIAMS:

The several errors assigned, in this case, have been properly treated by the learned counsel for the appellant as presenting but two questions. The first of these is over the sufficiency of the plaintiff's title to sustain a recovery upon its own strength. The second relates to the effect to be given to the legal presumption arising after the lapse of twenty-one years from the return of the survey of the Blackford, which is older than the plaintiff's survey.

The land in controversy is unseated. The plaintiff undertook, therefore, to show title out of the commonwealth, and to trace that title through a line of conveyances from the patentee to himself. For this purpose he offered the application of William Morrison, dated on the 22d January, 1848, for one-hundred acres of land in Dickinson township, Cumberland county, described as adjoining the Blackford on the west, the Duncan on the north, and the Adams county line on the south; also the warrant, issued in pursuance of the application, authorizing the survey of the land applied for. These were admitted without objection. He then offered to show that Lamberton, the deputy surveyor, now deceased, made a survey of the land under the authority of the warrant; that he returned the survey so made into the land office; and that the original return has been lost, and cannot be found after careful search by the proper officer. To show what the return was, he offered what purported to be a copy of it, made by Lamberton for his employer, which has passed with the title through the hands of the several holders down to the plaintiff. He also offered the patent from the commonwealth to Gitt for the same land, based upon and reciting the warrant to Morrison, the survey made under its authority, and the vesting of Morrison's title in the patentee. All this was objected to; so much as precedes the offer of the patent, because it was insufficient to show that a survey had been made and returned into the land office, and the patent was objected to on the ground that it did not pass the title of the commonwealth without proof of a previous survey and return by the deputy surveyor.

The first of these objections went rather against the effect of the evidence than its admissibility. The question for the court was, whether the several facts embraced in the offer were

competent to go to the jury, in support of the plaintiff's position that the survey had been regularly made and returned. If competent, their sufficiency was a question for the jury. But if the incompetency of the alleged copy of the return should be conceded, we do not see why the patent was not entirely competent. A patent is simply the deed of the state to its grantee. Its execution and delivery are an admission that all previous proceedings have been had, and all necessary formalities have been complied with. In Balliot v. Bauman, 5 W. & S. 150, this question was distinctly ruled, and the principle stated by SERGEANT, J., thus : " The patent conveys the full legal title of the state, and is, as to her, a merger of the previous proceedings, and a waiver of informalities ; it is, moreover, full and express notice to every person whatever that the land has been granted away, and is not vacant." The patent is therefore prima facie evidence of title and of survey: James v. Betz, 2 Binn. 12 ; Whitmire v. Napier, 4 S. & R. 290 ; Smith v. Vasbinder, 77 Pa. 127 ; Olewine v. Messmore, 128 Pa. 470. As the case stood when this offer was made, the plaintiff had a right to lay his patent before the jury as proof, prima facie, that the title of the commonwealth to the land described in it had passed regularly to the patentee, whose title he proposed to trace to himself. The first question, presented by the appellant, must therefore be answered in the affirmative.

The plaintiff did show a title in himself good, prima facie, against the commonwealth, and therefore good against all comers who could not show an earlier or a better title. His title was therefore sufficient to sustain a verdict, and he had a right to recover upon it unless the defendant could overcome it with a better one. The patent, though prima facie, was not conclusive, and the defendant had the right to controvert the effect of its recitals : Burd v. Seabold, 6 S. & R. 137 ; and show that the land was appropriated before the patent was issued, or the application of Morrison made. In Kelly v. Graham, 9 W. 116, the plaintiff put his patent in evidence. The defendant, in order to overcome this prima facie case, put in the warrant and survey on which the plaintiff's patent was based, and showed that the land in controversy, though covered by the patent, was not embraced in the survey. He then showed a prior right in himself by actual settlement on the land. This show-

ing overcame the prima facie case made by the patent, and enabled the defendant to hold the land thus improperly included in the plaintiff's patent. In Payne v. Howard, 107 Pa. 579, the plaintiff claimed land not embraced in his patent, and the burden of proof was on him to show that the land was covered by his survey, and omitted from his patent by mistake. Failing to make the showing necessary to enable him to recover against his own patent, he was properly nonsuited. The trouble was that he, and not the defendant, had to take up the burden of proof, because his patent did not cover the land he claimed. If it had covered the land, he could not have been nonsuited, and the defendant would have been compelled to assume the burden of proof.

We come now to the second question, the effect of the legal presumption arising from the return of the survey of the Blackford. The warrant for the Blackford was issued in October, 1792, returned on the 6th March, 1821, as surveyed on the 3d January, 1795, and the patent was issued in February, 1821. As the Morrison warrant was not issued until 1848, it is clear that if the Blackford covered the ground the plaintiff had no title. This was the real question in the case. How was it to be determined? By locating the Blackford on the ground. If its lines embraced the land in controversy, the defendant was entitled to a verdict; if they did not, then the plaintiff's title was not disturbed, and he could recover upon it. The defendant undertook, accordingly, to show the location of the Blackford.

If the return of survey had called for no marks on the ground, but for the lines of adjoining warrants, then the legal presumption on which the learned counsel for the appellant relies would have prevailed, and the location of the surveys called for would have been a location of the Blackford; but the official return calls for marks on the ground, and these are the highest evidence of the location of the lines. It is true that, after the lapse of twenty-one years, the law presumes that the survey was made as returned. In other words, the law presumes that the officer made his return in accordance with the facts, as his duty and his oath of office required. Having made return that he ran certain lines for the purpose of locating the warrant, the legal presumption makes that return conclusive

that he did run them as he has stated.    But where are the lines
so run?    This is a question of fact to which the legal presump-
tion cannot apply, until some mark of the survey has been
actually discovered that may serve as a starting point.    If the
marks called for at any corner can be found on the ground,
the legal presumption, fixing itself upon this corner, will inclose
the entire tract, by running the courses and distances laid down
in the official return.    If the marks called for are the lines of
older tracts, which the surveyor adopted as the lines of his
survey, then the older tracts must be located and the position
of the adopted lines established, at the outset.    When this is
done, the legal presumption affirms that these lines were adopted
as the exterior lines of the tract which calls for them as adjoin-
ers, just as the deputy surveyor affirmed by his return; and
the fact that such location changes the courses and distances,
or the shape of the tract as returned, will be disregarded.    If
the return calls for marked trees or other fixed monuments on
the lines and at the corners of the tract, these marks, when
found, locate the tract without regard to calls for adjoiners,
for they are the proofs of the actual presence, the official foot-
prints, of the deputy-surveyor on the ground.    When some of
them are found, the legal presumption supplies the loss of
others, and incloses the tract.    This subject was discussed, and
the authorities collected, in Grier v. Coal Co., 128 Pa. 79, and
in Bloom v. Ferguson, 128 Pa. 362, and it is not necessary to
repeat what was there said.

When we apply the rule to this case, it will be seen that the
legal presumption was not conclusively for or against the de-
fendant in this case.    The Blackford tract, under which the
defendants claimed title to the land in controversy, was bounded
on the north by the Duncan, and on the south by the county
line.    It called for the Thornburgh on the west, and for a
chestnut at its southwest corner.    The defendant's theory of
the location of the division line between the Blackford and the
Thornburgh rested on the Dobson improvement and the official
distances.    Establishing the southwest corner of the Blackford
in this manner, and running east two hundred and eighty-five
perches, as called for by the return of survey, and then turning
north, they would embrace the land covered by the Morrison
within their own lines.    The plaintiff's theory, on the other

hand, was that the chestnut, at the southwest corner of the Blackford, was actually on the ground fifty rods further west than the corner assumed by the defendant. Starting from this corner and running out two hundred eighty-five rods, he claimed to find the pine called for as the southeast corner of the Blackford, and turning thence north he claimed to find an original east line about fifty rods further west of that claimed by the defendant. The location of the Blackford, therefore, and the plaintiff's right to recover, depended on which of these theories should be found by the jury to be the true one. If the chestnut at the southwest, and the pine, called also the Slusser corner, at the southeast, were the original corners of the Blackford, marked on the ground and returned to the land office as the corners of the Blackford, they settled the question of location in favor of the plaintiff. The legal presumption, attaching itself to these established monuments, would, in the absence of other marks, close the survey by running the official courses and distances from them. If these were not marks of the original survey, then the distances and recitals in the return would lead to the conclusion that the location resting on the Dobson improvement was the proper one.

It would be difficult to imagine a clearer question of fact than that over the original character of the chestnut and the pine corners. It was peculiarly a question for the jury, and it was carefully submitted to them by the learned judge of the court below. If they have reached a wrong conclusion, the remedy was in the court below. There was evidence before the jury tending to show the original character of these corners, and fixing the east line of the Blackford in accordance with the theory of the plaintiff, which, if believed, was amply sufficient to justify their verdict, as the case appears on the paper-books. As the question was properly submitted, the errors assigned are not sustained, and

The judgment is affirmed.