# Lehigh Valley Coal Company, Appellant, *v.* Beaver Lumber Company.

*Land laws—Surveys—Location of block of surveys—Marks and monuments—Adjoiners—Courses and distances—Individual surveys.*

To establish the location of a block, its own marks and monuments upon the ground must be taken as indicating its boundaries; if these be absent, then the adjoiners corresponding to its calls fix the location; in the absence of both, then the courses and distances as returned. To establish the location of individual surveys, members of a block, the same rules are called into operation, and the separate surveys established on the ground by the marks on the ground and in their absence by the relation of the surveys to their block.

In an action of ejectment where the plaintiff shows a complete paper title, if the defendant succeeds in establishing the location of a block of surveys older than that under which the plaintiff claims, then the presumption would be that the tracts of which the defendants claim possession are located as returned by the surveyor. This presumption may be rebutted by showing that the continuity of the block had been broken at the point where they adjoined their companions, that they had not been located at all, or at some other place; but the presumption is in favor of the defendant. The surveys cannot be wrested from or detached from their companions in the block, except by indubitable evidence that the return of the surveyor was a mistake, or wilfully false, and that they had been located elsewhere by monuments on the ground. No mere negative evidence that marks cannot now be found to correspond with the return, will overcome the presumption. As long as the location of the leading warrant is established, the location of all the tracts in the block is fixed.

In an action of ejectment where the defendant produces competent evidence tending to show that the plaintiff's block was and could now be well located by marks on the ground two miles east of the present location, and the plaintiff produces competent evidence tending to show that the defendant's block could now be well located two miles west of it where it met calls for an older survey, and did not touch the land in dispute, the case is for the jury.

*Land law—Acceptance of survey—Indorsement.*

It is not necessary to the validity of the return of the survey that it should be indorsed accepted.

*Land law—Survey—Resurvey—Work on the ground.*

One of a block of several tracts may be located where none of the interior lines can be found, if the block can be located by adjoiner.  Collins v. Barclay, 7 Pa. 67 (1847).

Where an owner of a block of tracts in 1808, petitioned the board of property for a resurvey, and his manifest purpose is merely to have the lines actually run on the ground so as to strictly comply with the act of 1785, he does not thereby abandon the original survey, and the resurvey under his petition is no evidence of abandonment.

*Land law—Location—Prior appropriation.*

All the rules relating to the location of a block and the members of a block are wholly without application to a junior block if the land it seeks to appropriate has already been surveyed and returned on older warrants.

The members of a block cannot be wrested from their block for every mark on the block is a mark for each member of it.

*Ejectment—Disclaimer—Possession—Verdict—Costs.*

Ordinarily, unless the defendant in ejectment files a written disclaimer of title to, or possession at the service of the writ, of the whole or part of the land described in it, the presumption as to his possession is conclusive. Even though he offers to prove he is not in possession or seeks to narrow such possession to a part only, the plaintiff is entitled to a verdict which will at least carry costs; but if he immediately files disclaimer, then the issue is confined to the part to which defendant sets up the right of possession.

In an action of ejectment where the defendant does not disclaim possession but at the trial calls a witness who testified positively that defendant was not in possession of, nor claimed title to a portion of the land described in the writ, but the jury returned a verdict in favor of the defendant for the whole of the land, judgment should not be entered on the verdict until defendant, by writing, filed, disclaims possession of the land not claimed by it.  If defendant insists upon a judgment on the verdict, the court may stay fi. fa. for costs until such writing is filed.

Argued April 21, 1902.    Appeal, No. 315, Jan. T., 1901, by plaintiff, from judgment of C. P. Centre Co., Jan. T., 1897, No. 204, on verdict for defendant in case of Lehigh Valley Coal Company v. Beaver Lumber Company, Mary I. Ardell, John Ardell, Jr., George Lucas, David Hoover, D. C. Shope, Isaac Lanning, Frank Lanning, Alfred Ammerman and Wilson Wolford.   Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Ejectment for land in Union and Rush townships. Before BELL, P. J., specially presiding.

The questions involved as stated by the appellant were as follows :

Questions of fact. (*a*) Where is the true location of plaintiff's surveys ; and (*b*) where is the true location of defendants' surveys ?

Questions of law. (*a*) The admission or rejection of evidence under objections, relative to the title and to location of both plaintiff's and defendants' surveys ; (*b*) the competency of surveyors to give their opinion as to the location of individual members of a block of surveys, without having done the necessary work on the ground to locate the entire block ; (*c*) where an owner of a block of surveys has obtained a resurvey by order of the board of property, can he sustain title by offering the warrant and original survey, without the resurvey; (*d*) does the title to the land date from the original survey, or from date of the resurvey, and its acceptance; (*e*) can individual and projecting members of a block be located separate and apart from the block of which they are members ; and (*f*) whether or not under all the evidence the plaintiff is entitled to recover at least a portion of the land in controversy.

The facts of the case are stated at length in the opinion of the Supreme Court.

*Errors assigned* were (1–58) various rulings on evidence and instructions, sufficiently appearing by the opinion of the Supreme Court.

*Calvin M. Bower* and *Ellis Orvis*, of *Orvis, Bower & Orvis*, with them *S. P. Wolverton*, for appellant.—When surveys are made and returned into the land office in block, they are to be located on the ground in blocks: Hagerty v. Mathers, 31 Pa. 348 ; Darrah v. Bryant, 56 Pa. 69 ; Glass v. Gilbert, 58 Pa. 266 ; Pruner v. Brisbin, 98 Pa. 205 ; Northumberland Coal Co. v. Clement, 95 Pa. 137.

A surveyor may state facts and his opinion on those facts, to enable the jury to form a correct judgment of the matter in dispute: Forbes v. Caruthers, 3 Yeates, 527 ; Northumberland Coal Co. v. Clement, 95 Pa. 126 ; Jackson v. Lambert, 121 Pa. 182.

The plaintiff's counsel contended in the court below, and now contend, that the resurvey in August, 1808, of the Gratz block, west of their original location in 1793, and on entirely different ground, was an abandonment of the original location and of the land covered by the surveys as originally returned, and that as the resurvey covered new territory, the inception of the defendants' title was from the date of resurvey and the appropriation of this land, and that it could in no way affect intervening rights, and that the Levy block, having been located on the ground by actual survey in 1794, was an appropriation of the land covered by these surveys, and that the defendants' title was junior to the plaintiff's title by reason of the resurvey and relocation of the defendants' block of surveys in 1808: Bryson v. Hower, 8 S. & R. 409; Sabins v. McGhee, 36 Pa. 453; Cassidy v. Conway, 25 Pa. 240; Steel's Lessee v. Finley, 3 Yeates, 169; Hughes v. Stevens, 43 Pa. 197.

Our position at the trial was, and still is, that in any possible view of the case the record in the land office resulting in the said resurvey was a vitally essential part of defendants' title, and could in no sense be ignored. At each step plaintiff called the court's attention to the existence of the resurvey of the Gratz block, and insisted that defendants had not made out a title until they had produced the same in evidence. Their original surveys were not as those of 1808 "indorsed accepted," and thus bore the earmarks of being invalid. But the authority of the surveyor general is not exhausted by the mere return of his deputy. Until he accepts the survey it is not consummated: Fritz v. Brandon, 78 Pa. 352; Stephens v. Cowan, 6 Watts, 511.

It is always proper in controversies involving lines, corners and boundaries of land, to receive in evidence what the owner may have said about them while owning the land: Gratz v. Beates, 45 Pa. 495; Kennedy v. Lubold, 88 Pa. 246; Keller v. Ford, 26 W. N. C. 247.

*A. O. Furst*, with him *William E. Gray*, for appellee.—Where a younger block of surveys calls for an older block as an adjoiner, the older block must first be located on the ground: Hagerty v. Mathers, 31 Pa. 348; Malone v. Sallada, 48 Pa. 419; Fox v. Lyon, 33 Pa. 474; Eister v. Paul, 54 Pa. 196; McDermott v. Hoffman, 70 Pa. 31.

After the lapse of twenty-one years it is presumed that the tract was located as returned by the surveyer into the land office, and in the absence of rebutting facts the official courses and distances will govern, the lines of the survey being presumed to be run as returned. The presumption that the survey was made on the ground as returned may be rebutted by proof of the existence of marked lines called for by the survey, or other monuments called for or other facts showing that the actual location on the ground was different from the location returned; but in the absence of such evidence of actual location elsewhere, the location as returned into the land office constitutes the best evidence of the location of the tract, and this presumption of the law is not to be rebutted by mere negative evidence that no corresponding marks could then be found. It is presumption juris et de jure: Ormsby v. Ihmsen, 34 Pa. 462; Packer v. Schrader Mining, etc., Co., 97 Pa. 379; Malone v. Sallada, 48 Pa. 419; Bellas v. Cleaver, 40 Pa. 260; Grier v. Penna. Coal Co., 128 Pa. 79; Bushey v. South Mountain Mining & Iron Co., 136 Pa. 541.

If more than one older tract or block of surveys is called for by a junior survey or a junior block, and the junior block cannot be located or any of its members, so as to answer all of its calls or the calls of the individual surveys, that location must be selected for the younger which will answer most of its calls, and at the same time best preserve the general configuration of the block: Pruner v. Brisbin, 98 Pa. 202; Bloom v. Ferguson, 128 Pa. 362; Ferguson v. Bloom, 144 Pa. 549; Northumberland Coal Co. v. Clement, 95 Pa. 126.

Where a younger survey calls for older surveys on the east and south and west, if there be not sufficient vacancy to answer the calls of all, the younger must give way, and to locate the younger, the legal method adopted in Pennsylvania is to run out the lines of the older blocks, and if the vacancy be insufficient to accommodate all the younger surveys, those called for, the first surveys of the younger must be placed upon the vacancy and the younger surveys must yield to the older location: Manhattan Coal Co. v. Green, 73 Pa. 310.

Where a junior survey calls for older surveys surrounding it upon three sides, its lines need not be run upon the ground, but it can be properly located by and to the calls of the senior surveys: Quin v. Brady, 8 W. & S. 139.

OPINION BY MR. JUSTICE DEAN, October 13, 1902 :

This was an ejectment in the court below to recover possession of about 1,131 acres of land warranted, as averred by plaintiff, in names of Reuben Haines, Martha Huston and Robert Morris in the townships of Union and Rush, Centre county.

The three warrants were all granted the same day, January 8, 1793, and surveyed, the first two, August 12, 1794, and the third, August 19, following. The three tracts formed the southern end of a block, called the Levy block, of sixty tracts, the warrants for which were applied for on the same day by the same purchaser; they were surveyed on different days but returned as a block at the land office.

The paper title of plaintiff was complete ; the only question was, whether the surveys covered the land in possession of defendant, and if so, whether appellant's surveys constituted an attempt on the part of the commonwealth to grant a second time, the same land which she had theretofore, by warrant and survey, granted to appellee. The appellee claimed the land from which plaintiff sought to dispossess it, under four several warrants issued in 1792 and surveys made in July, 1793, more than a year before the date of appellant's surveys. These warrants are the David Beveridge, John Price, Matthew McConnell and John Whelan. They call for over 1,300 acres and if they include the land in dispute, more than cover all that appellee is in possession of and more than plaintiff claims. These tracts, also formed part of a large block known as the Gratz block containing sixty-one tracts. The warrantee was the same Aaron Levy who took out the warrants for the Levy block; he conveyed the Gratz block to Gratz in 1804.

As already noticed, appellant's surveys are, by more than a year junior to appellee's, and if they appropriate the same land must yield to the older location. Do appellee's surveys cover the land in dispute ? In point of time, if both attempted to take the same land, appellee being first on the ground, its surveys must be first located, for the surveys of appellant call among others, for tracts of the older, the Gratz block ; not only is this the reasonable and just method of locating junior surveys, but it is the long settled lawful method, as pointed out in McDermott v. Hoffman, 70 Pa. 31, and in a long line of cases preceding it. To establish the location of a block, its own

marks and monuments upon the ground must be taken as indicating its boundaries; if these be absent, then the adjoiners corresponding to its calls fix the location; in the absence of both then the courses and distances as returned.

To establish the location of individual surveys members of a block, the same rules are called into operation, and the separate surveys established on the ground by the marks on the ground and in their absence by the relation of the surveys to their block. Had any other rule been adopted, it would have been impossible to locate many of the surveys of a block made about the years the surveys before us were made. The surveyor seldom ran interior lines and sometimes not even the exterior ones; he measured the distance of the exterior lines of his block and marked the corners; noted their course; then went to his room and plotted his interior lines and made his return to the land office. In this return the block often called for older surveys, where he knew or thought he knew they were established on the ground, and these control the boundaries where all other marks which would stop short of them have disappeared.

Here, appellee after appellant's prima facie case was in, undertook, first, to locate the Gratz block of which the four surveys which covered the land in dispute formed a part. If by the weight of the evidence it succeeded in establishing the location of the block, then the presumption would be, that the tracts of which it claimed possession were located as returned by the surveyor. This presumption might be rebutted by showing that the continuity of the block had been broken at the point where they adjoined their companions, that they had not been located at all, or at some other place; but the presumption was in favor of appellee. They could not be wrested from or detached from their companions in the block, except by indubitable evidence, that the return of the surveyor was a mistake or wilfully false, and that they had been located elsewhere by monuments on the ground. No mere negative evidence, that marks cannot now be found to correspond with the return will overcome the presumption. As long as the location of the leading warrant is established, the location of all the tracts in the block is fixed. And such is the substance of the ruling in Bushey v. South Mountain Mining & Iron Co., 136 Pa. 541, and in many

cases preceding it; in fact, as is stated in one of the cases, the presumption is rather, after this lapse of time, that marks, if made on the ground originally, have been obliterated.

In this view of the law, appellee undertook to locate the Sharp Delaney, the leading warrant of its block; this is a descriptive warrant; while we will not say it succeeded in this beyond dispute, nevertheless, the weight of the evidence puts it on the ground to correspond with the return; then, with due regard to the older and adjoining undisputed surveys, called for in the return, such as the John Whitmer, Matthias Graff, John Burg and others, and the Bartholomew Wister block, the location of which was also undisputed, the entire Gratz block was placed upon land at that time vacant and so returned into the land office. Then several reputable surveyors testified, that for years they had known the boundaries of these tracts and blocks called for and that their location had never been disputed. On this and much testimony of similar import, the appellee relied as establishing the location of the Gratz block and the land of which it was in possession as a part.

The theory of appellant was, that the Levy block of sixty tracts of which the Reuben Haines, Martha Huston and Robert Morris were three, the most southerly tracts of the block, was surveyed in August, 1794, thirteen months after the location of the Gratz block and that the land in dispute was then vacant; that the location of the block, the Levy, was established by unmistakable marks made for it on the ground, some of them there to this day, and others there within the recollection of witnesses still living; two of them, it is argued, are specially significant, the George Latimore red oak, and the Wallace run hemlock; we do not think there is any reasonable doubt of these being marks of the block at the date of the original location of it, if plaintiff's witnesses were believed, and their credibility was not questioned. There was also some evidence tending to show a white pine at the northwest corner of the Edward Scott, another of the tracts, and a yellow pine at the southwest corner of the Casper Haines.

There was other evidence of lines and marks on the ground of more or less significance. The effect of this location was, to put appellant's Haines, Huston and Morris tracts over on and cover a large part of appellant's location of the Beveridge,

Price, McConnell and Whelan tracks. There was enough, or nearly enough, vacant land to answer appellant's warrants, adjoining the old surveys of the Beach and Morgan on the west and appellee's Beveridge, McConnell and Glentworth on the southeast, but the alleged marks on the ground of the Levy block carry its three surveys further southeast on and over the land claimed by appellee. If the Gratz block located by its adjoiners and calls the year before be established by appellee as it claims, and the Levy block by monuments and marks of its own on the ground the year after, as appellant claims, then clearly a large part of the land described in the writ and which is the subject of dispute, is covered by the David Beveridge, John Price, Matthew McConnell and John Whelan, four of the tracts of the Gratz block; on the top of them the next year, Wallace, the deputy surveyor, must have laid the Reuben Haines, Martha Huston and Robert Morris, three of the Levy block. We are not considering now the evidence and inferences pointed out by both sides as corroborative of their antagonistic claims but are assuming, that if both be established, they are claiming the same land. As before noticed, the appellee claims to locate the Gratz · block by indisputable locations of adjoiners and calls; starting with the leading warrant which was descriptive, the Sharp Delaney, and which is fixed on the ground, it lays the block with its four disputed tracts up to its calls and adjoiners; the survey representing this block is returned into the land office and placed on the public records; it is not indorsed "accepted" as many, perhaps most, surveys are; but the absence of this indorsement does not affect its regularity or its legality; the survey had been made by the commonwealth's officer by virtue of a warrant directed to him by her; having made the survey he did what the warrant further commanded, made a return thereof when his surveyor's fees were paid; and while the clerk in the land office did not indorse the survey "accepted," no objection was made; the warrantee had already paid his purchase money and if he now chose could demand his patent. There was no statute requiring that the return should be indorsed accepted; there was one requiring that if not accepted it should be so indorsed. So far as we know from a long judicial experience, the courts have never exacted as a matter of evidence, an indorsement of acceptance. Taking the purchase money for a descrip-

tive warrant, issuing the warrant to the deputy surveyor, he then placing his return in the office where the law required it to be placed, and no objection by the surveyor general, gives title to the warrantee as against subsequent warrantees of the same land. A caveat might have been filed by another claimant against the acceptance of the survey and the issuing of a patent, then either the board of property or the courts would have determined who was entitled to the legal title or patent, but the commonwealth could not take the first warrantee's money, order its officer to survey his land, receive without objection that officer's return and keep the land too.

The tracts of appellee's block, here in dispute, were surveyed from July 8 to July 13, 1793, and returned into the office, March 21, 1794. The date of the survey is the inception of appellee's title. Therefore, assuming it to be established, as of the year 1793, that the Gratz block is located on the ground by its calls and the Levy block as of a year after by marks and monuments on the ground, the Levy block must yield priority to the older Gratz block. It is wholly immaterial in what manner the Gratz block was located, whether by calls for adjoiners or by monuments on the ground; on the point we are considering the question is, without regard to method, which was there first? Both claim the right to be there now. The question of seniority is not determined by the method of the surveyor in defining the boundaries, but by the date he defined them; if at the time, he adopted the external lines of survey of an older date for the external lines of his block, that was the date of his survey, as much so, as if he had notched a tree of each corner of his block and one for the outside corner of each tract; and the block is well located when so returned and is then beyond peril of appropriation by subsequent warrantees who may mark their surveys on the ground within the lines of the older block.

The difficulty of applying the law in the authorities cited on both sides, arises not from any conflict in the decisions, for there is none, but assuming the facts of location to be, as averred on either side, the counsel invoking them can safely say, they rule the case in his favor; but they are directly against him if the jury rules the facts against him; not only are their claims directly conflicting as to the location of certain tracts of their

respective blocks on the land in dispute, but to make the issue of fact more difficult for the jury, each one alleges his antagonist's block is located elsewhere ; appellant, that the Gratz block was and can now, be well located by marks on the ground two miles east of the present location ; appellee, that the Levy block was and can now be well located two miles west of it, where it meets its calls for the older surveys and does not touch the land in dispute ; and each side adduced entirely competent evidence tending to establish its allegations.    As matters stood at the close of the evidence the court could do no other, than submit the conflicting evidence to the jury ; this was done without material error in a most elaborate charge.    True, in some parts it leaned in favor of defendant, but the judge was impelled to this by evidence, which in some of its features, strongly bore in defendant's favor.    He certainly did not follow the course taken by counsel on each side in these paper-books, belittle the evidence of their antagonist, at the same time give marked prominence to their own ; both sides were fully and fairly presented to the jury and so equally balanced were they, that we doubt, if he would have set the verdict aside had it been the other way.

The next important question to that of the actual location of the original survey of the Gratz block, is that raised by appellant from an alleged resurvey of that block.    It appears that on June 7, 1808, from a minute made on the records of the board of property, a petition was presented to the board by Simon Gratz, giving a list of the sixty-one tracts in his block, and stating that he was owner, and then come these words, apparently a quotation from a written petition or oral statement:

" That your petitioner has reason to believe that some of the lines were not run originally, and others imperfectly marked, he therefore prays that the honorable board of property may grant him an order of resurvey to the proper deputy surveyor in order that he may have correct returns made on the said lands.

" Whereupon, the board on consideration of the case order that the deputy surveyor of the proper district be directed to make correct resurveys on the aforesaid warrants and make returns of them into the office of the surveyor general agreeably to the prayer of the petitioner."

The surveys of both the Levy and Gratz blocks in 1793 and 1794 were made by a deputy surveyor named Joseph J. Wallace, who had also surveyed some of the older blocks and tracts called for as adjoiners. The order for the alleged resurvey went into the hands of another deputy surveyor, James Harris, and he re-ran the lines of at least parts of the block and made return of them including the four warrants on which appellee lays claim to the land under the surveys of 1793.

It will be noticed, there was an interval of nearly fifteen years between the survey of 1793 and that of 1808, and the order was executed after this lapse of time by another deputy. We do not see, that the action of the board of property on the Gratz petition and the order made thereon, subjected this return to any of the rulings of this court on descriptive, indescriptive or shifted warrants. Call them descriptive, by fixing the location of the block from the description of the leading warrant, the Sharp Delaney, there was no pretense in the petition or in the return, that the block had not been located on vacant lands by reason of prior surveys on other warrants on the land called for; obviously, Gratz believed the lines of the block, or some of the members of it had not been run and marked on the ground; in this he was probably right; he also believed that his title would not be secure from subsequent surveys unless this was done; in this he was undoubtedly wrong. Under the act of April 8, 1785, which is applicable to both block surveys and which was doubtless known to land speculators as well as lawyers, it was directed that every survey returned into the land office should be made by " actual going upon and measuring of the land and marking the lines returned upon such warrant" after the warrant had come into the hands of the deputy surveyor, otherwise to be void and of no effect. It was not until 1807, that in McRhea's Lessee v. Plummer, 1 Binney, 227, it was held by this court, that a survey not made on the ground was not absolutely void, but only voidable; that the deputy might adopt for the warrant, lines of other surveys made by him without actually going upon the ground and marking the lines, and, that the return made by such a method was good. Even in this case, BRACKENBRIDGE, J., sharply dissented. Through subsequent years, many cases followed, of a similar character down to 1847, when in Collins v. Bar-

clay, 7 Pa. 67, it was held, that one of a block of fifty-two tracts could be located where none of the interior lines of the block could be found, but where the block could be located by adjoiners and therefore, the Samuel Bethel, the one in dispute, could be located by its relation to the block. To-day, that is the settled law; but in 1808 it was not considered settled and was only placed beyond question after many decisions and years of discussion; so it is highly probable that Simon Gratz, having before him the act of 1785, declaring surveys not made on the ground and marked, void, and knowing his had not been so marked, applied to the board of property, to order that done which he thought would cure the defect. We have not the written petition before us; it was probably an oral statement minuted by the board, for it says, " The petitioner stated," then follows the list of sixty-one tracts, and the quotations of the purpose and the action of the board as already given. He says, he " has reason to believe that some of the lines were not run originally, and others imperfectly marked," therefore, he wants a resurvey in order that he may have correct returns made; he does not intimate that they have not been located on vacant land as returned, but says that lines were not run on the ground and some of them imperfectly marked. There is, in these proceedings standing alone, no evidence of the remotest intention to abandon the surveys as returned; they show that he did want the surveyor to actually go upon the ground, run the lines and mark them; the transaction was not, within any real meaning of the word, a resurvey; it was not a new measurement to ascertain quantity; nor a shifting of the location to avoid older and interfering surveys; it in fact, was nothing more, than an attempt to comply with the strict requirement of the act of 1785, because a failure to do so, as he probably thought, might put in peril his title in the future. The cases cited by the learned counsel for appellant are misapplied to these facts; in most of them, whether abandonment was decided by the court or found by the jury, it was held, that as to unseated land there must be an intention to abandon the old survey in which case it followed, that the inception of title dated from the return of the new one. To confer title by improvement, the improvement must be followed within a reasonable time by actual occupation or abandonment would be

conclusively presumed. To make title by settlement there must be actual residence on the land with defined boundaries; any break in the possession is deemed an abandonment and the inception of title dates only from resumption of actual residence on the land. But as to wild unseated lands, such as these, hundreds of thousands of acres were taken up by speculators in the years following the Revolution; they often sold them in thousands of acres lots to other speculators; but there was no pretense of improvement or occupation by either, and abandonment of title would not be presumed without unequivocal acts indicating an intention to abandon. We think on the writings in evidence, the court properly held, that no intention to abandon the original location or any part of it could be presumed from them alone, and so as bearing on that point the alleged resurvey was irrelevant. But, as bearing on the question of location elsewhere than by the lines of older surveys, he admitted it; on that question, the proceedings perhaps were relevant, depending on what significance the jury in connection with the other evidence of location gave the marks of 1808 found on the ground. The marks of the resurvey, even though for the purpose of marking lines not actually run or for remarking those imperfectly marked fifteen years before, would be some evidence pointing to the original lines of the block as indicated in the return. But as to this, from the maps before us, the 1808 marks made but a small variation in the whole block from those in the original return of survey.

Appellant complains of the meagerness of the charge on the evidence tending to show that by the resurvey of 1808, Gratz's intention to abandon that of 1793 was strongly manifested. This is scarcely fair to the court. While in his general charge the learned judge did not very elaborately discuss this matter, yet appellant's counsel in their twenty-first written prayer for instructions specify about all the material facts which bore in their favor on this question, and then close the prayer in these words: "The jury are bound to regard all these undisputed facts and records as powerful evidence that the survey of 1793 of defendant's tracts was abandoned, and that the same was located as returned in 1808." This point was denied and properly so; there was not in the whole case any "powerful evidence," that Gratz had abandoned in 1808, the survey of

1793; there was considerable evidence tending to show that his earlier survey did not cover the land in dispute, but none, from the proceedings before the board of property or the return of the deputy, that showed "powerfully" an intention to abandon the return of the location by calls for adjoiners. When the judge left to the jury, as a qualification of his denial of the point, all the evidence bearing on the question of the abandonment, including the facts set out in the point, the charge was as full and favorable to appellant as it had a right to ask. We are of opinion a peremptory denial would have been a proper answer, but apparently fearing the jury might think he withdrew from them the evidence elaborately set out in the point, the judge in his answer submits it to them, they to pass on its weight.

Appellant has preferred fifty-eight assignments of error. The first to eighteenth, inclusive, complain of the court's rulings on offers of evidence; a consideration of these rulings, with the evidence in connection with them, fails to disclose any error. The offers all bore on the question of location, original warrants, surveys and connected drafts from the land office, and the testimony of experienced surveyors having knowledge, not only of the location of the Gratz block, but of older sur-veys called for by that block; such testimony on a question of location is always relevant. So far as the cross-examination of appellant was objected to and the objections sustained, the reason for the ruling was, that appellant attempted by cross-examination to introduce its case in rebuttal, resting on the alleged resurvey of 1808. All this evidence finally came in and was fully before the jury, therefore, even if the objection at the time was not well founded, no injury resulted to appellant. These eighteen assignments are all overruled.

Appellant's twenty-third, twenty-fifth, twenty-sixth, twenty-seventh, thirtieth, thirty-first, thirty-second, thirty-third, thirty-fifth, thirty-sixth, thirty-seventh, thirty-ninth, fortieth, forty-first, forty-second, forty-ninth and fiftieth assignments, are grouped together in the argument and they allege error in the charge as to the rule of location of members of a block of surveys. Undoubtedly, the members of a block cannot be wrested from their block, for every mark on the block is a mark for each member of it (Ferguson v. Bloom, 144 Pa. 549), and the instruction of the court below did not disregard this well es-

tablished rule. The instruction had reference to the conflicting testimony which tended to support the antagonistic theories of location. Assuming that appellee's location by calls was established, then appellant's location of the Levy block by monuments on the ground, overlaid a large part of the older surveys, the Beveridge, McConnell, Price and Whelan; this could not give the junior survey the land of the older; to satisfy its warrants the surveys had to be made on vacant land; as the land in dispute was not vacant, a fact well known to Wallace, the deputy, who had located the Gratz block the year before, he could have and perhaps intended to put them on the vacant land to the north, between the land in dispute and the older surveys of the Beach and Morgan. The appellee was not insisting, that as to these three tracts, for the purposes of this issue, it was necessary to so locate them, for both parties and the court knew, that this suit was not between appellants and the owners of the land which was vacant in 1794, but between the successors of Gratz, who was the owner of that part of the land in 1794, already appropriated under his older survey. It was a suggestion by the court of a possible solution of the contradictory testimony and the apparent inconsistent returns of the deputy surveyor. It was on the assumption, that if the jury found appellee's location as claimed, that he used this language which is the subject of complaint : " In such event it might be allowable for you, as is suggested by counsel for defendant, to disregard the northern call of the Reuben Haines for the Aaron Levy, the tract east of the Casper Haines, and to shove the Reuben Haines west and with it the Martha Huston and Robert Morris, to occupy any vacant land found between the William Beach on the west and the Beveridge, McConnell and Glentworth on the east." The jury was not bound to find a vacancy for plaintiff's surveys if they were junior, but to reconcile the work of the surveyor with his return, they might find that he intended to locate them further north and west on vacant land where they would still adjoin most of their calls. There was no error in this statement to the jury, as an inference from the evidence, and there is no contradiction of the rule of law, that a member of a block cannot be torn from its block. This rule might well have been invoked by appellee, for if appellant's theory prevailed, the result would have been

to detach the Beveridge, McConnell, Price and Whelan from their block. The alleged inconsistency in the judge's rulings and instructions arises largely, from appellant's counsel's failure to realize the force of the evidence on the other side. Of course, if appellee's block had not been located by older surveys, as it claimed, then appellant was first on the vacant land and its three disputed surveys, in their relation to the Levy block, and must be located by the block's own monuments, marks on the ground; but this was just the question of fact at issue all through the trial. All the rules relating to the location of a block and the members of a block are wholly without application to a junior block if the land it seeks to appropriate has already been surveyed and returned on older warrants; no rule which this court has ever announced will give to such junior survey the land which the sovereign has already sold to another. A failure to fully recognize the main fact, a prior location, on which appellee's counsel threw the whole weight of their case in the court below, constitutes the weakness of appellant's argument here.

As to the question raised by the fifty-fifth assignment of error, it is one which demands notice. In its thirty-first point appellee requested the court to instruct the jury: "The plaintiff has failed to show, in contradiction of defendant's evidence any possession of defendants in this case of land not embraced in the original lines of the Beveridge, Price, Whelan and McConnell." The court denied this point, saying, it would answer it more fully in connection with appellant's last point. This point was as follows: "That if the jury finds that the Rueben Haines, Martha Huston and Robert Morris are located on the ground as contended for by plaintiff, they must find for plaintiff for all the lands in said tract northeast of the northeastern line of the Beveridge, Price and Baker tracts as fixed by the black oak and the line of 1808, well identified and undisputed on the ground."

In answer the court instructed the jury as follows:

"Now I say to you as to this point that if you should find that the defendants' claim of location is correct you should on the general issue find for the defendants; but if you should so find because you would conclude from the weight of the evidence that the plaintiff's surveys and the defendants' surveys

interfered one with the other, and that the defendants' surveys were entitled to it by reason of seniority ; and, if you should find at the same time, that Mr. Ardell's testimony as to not being in possession outside of the original lines of the Price, Beveridge, McConnell and Whelan, as run in 1793, is not sufficient to overcome the presumption raised by the service of the writ on the defendants, that the defendants were in possession of the locus in quo, then your verdict might be as indicated in this point, and you would find for the plaintiffs for all the land in said tracts northeast of the northeastern line of the Beveridge, Price and Baker tracts as fixed by the black oak and the line of 1808, well identified and undisputed on the ground, and as to the balance of the land as described in the writ you would find for the defendants."

Ordinarily, unless defendant files a written disclaimer of title to, or possession at the service of the writ, of the whole or part of the land described in it, the presumption as to his possession is conclusive, even though he offers to prove he is not in possession or seeks to narrow such possession to a part only; the plaintiff is entitled to a verdict which will at least carry costs ; but if he immediately files disclaimer, then the issue is confined to the part to which defendant sets up the right of possession.  Sometimes a rule of court points out the practice, so that there is no uncertainty as to the extent of the possession in controversy.  In this case as already noticed the writ claimed 392 acres, 127 perches, 446 acres, 154 perches, and 381 acres and allowance on three several warrants, situate in Union and Rush townships ; the writ was served on nine separate defendants ; they denied being in possession of any land in the names of the warrantees set out in the writ by their general plea of "not guilty;" it took court and jury three weeks to determine just what land defendant was on ; it was impossible for defendant to know what plaintiff claimed until it developed at least its prima facie case, consequently it was impossible to file a disclaimer to a defined part until the time of trial.  Then, defendant called John Ardell as a witness, who testified positively, that defendant was not in possession of, nor did it claim at any time a right beyond the lines of the Beveridge, Price, McConnell and Whelan tracts.  Undoubtedly, part of the land described in the writ is not in possession of nor is it claimed by

defendant, yet the verdict is a general one and the record carries with it the right to possession of all the land set out in the writ. As the jury seems to have disregarded the court's instructions, and the sworn testimony of Ardell, defendant's own witness, judgment should not have been entered on the verdict until defendant, by a writing filed, disclaimed possession of the land outside the four surveys on which they rely. But this irregularity does not of itself necessarily warrant a reversal, unless defendant insists on claiming after a verdict what at the trial it disclaimed before; in which case the court below can stay fi. fa., for costs until such writing be filed.

We have not taken up each assignment of these fifty-eight and discussed each; it was not neccessary; many of them are wholly without merit; of appellant's twenty-three written prayers for instructions, the court affirmed twenty but the jury denied the facts and inferences set out in these; that is a trouble in appellant's case a court of review cannot cure.

The judgment is affirmed.